Stephen M. SCHNEIDER, by his
Guardian Ad Litem, Patricia M.
SCHNEIDER, Appellant,

v.

Jake ERICKSON, Respondent,

Wal–Mart Stores, Inc., Defendant.

No. C7–02–800.

Court of Appeals of Minnesota.

Dec. 17, 2002.

Robert J. Feigh, Hall & Byers, P.A., St. Cloud, MN, for appellant.

Michael J. Tomsche, Bryan B. Carroll, Tomsche, Sonnesyn & Tomsche, P.A., Golden Valley, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge, KALITOWSKI, Judge, and HALBROOKS, Judge.

## O P I N I O N

HALBROOKS, Judge.

On appeal from summary judgment dismissing his negligence claim, appellant argues that the district court erred by (1) ruling that appellant primarily assumed the risk of being hit in the eye with a paintball when he played paintball without eye protection, and (2) granting summary judgment when genuine issues of material fact remain. Because we conclude that appellant primarily assumed the risk of being hit in the eye with a paintball by playing paintball without eye protection and that no genuine issues of material fact remain for trial, we affirm.

## FACTS

On October 6, 2000, appellant Stephen Schneider, age 17, respondent Jake Erickson, age 16, and Mark Skaalerud, age 16, decided to play their own version of the game of paintball. In preparation for their game, they went to a Wal–Mart store and purchased a paintball gun for appellant and paintballs and carbon-dioxide cartridges for the three of them to share. Appellant and the other boys knew that the local stores had policies prohibiting sales of paintball equipment to anyone under 18. They chose a specific cashier in a specific store whom they believed would be less likely to check identification, and they succeeded in purchasing a paintball gun and supplies.

Appellant had seen paintball played on television, and he was aware that players on television always wore head and eye protection. Appellant testified that he had seen language in advertisements for paintball equipment warning that eye protection was required at all times while playing paintball. He also testified that his parents told him that he could not purchase a paintball gun because they looked dangerous. Before buying the paintball gun, appellant knew in general that the guns could cause serious injury, that getting hit in the eye with a paintball could cause an eye injury, and that people using paintball guns should wear eye protection.

Appellant and his friends played the paintball game on the 60–80 acres of land on which appellant's parents' house is located. Before the game started, appellant got three motocross-type helmets and three sets of ski goggles from his parents' garage. The three players agreed on a few ground rules. They agreed that there would be no shots to the head or groin and that, if a person ran out of paintballs and notified the others that he was out of paintballs, he would not be shot.

Appellant, respondent, and Skaalerud started their game of paintball between 5:00 and 6:00 p.m. All three wore helmets and goggles. At about 6:45 p.m. they took a break. During the break, appellant and Skaalerud took off their eye protection because it was starting to get dark and more difficult to see. Respondent was aware that appellant and Skaalerud had taken off their eye protection. After the break, all three continued shooting paintballs at each other. At one point, respondent and appellant were about 20–50 feet apart, separated by some small trees, shooting paintballs at each other. Appellant shot and hit respondent, stopped to reload his gun,[1] and was then hit in the left eye by a paintball shot by respondent. As a result of respondent's errant shot, appellant sustained a permanent injury to his left eye.

Respondent testified that he was not aiming for appellant's head, but was aiming at his shoulder and chest. Appellant testified that he knew that respondent was going to shoot at him and that respondent did not appear to be aiming for his head. Appellant stated that, if he thought respondent was aiming for his head, he would have said something.

Appellant testified that the paintball guns were "pretty accurate" from 20–30

feet, but that there were times when he missed his target. He also acknowledged that, even though they had the rule prohibiting head-shots, from a distance of 30 feet it was possible that someone could accidentally get hit in the head. Additionally, appellant acknowledged that when the carbon-dioxide cartridge that powers the paintball gun is not fresh, the paintball gun may not be as accurate. Skaalerud testified that at one point prior to appellant's injury, he accidentally shot respondent in the head. Respondent testified that he was hit in the head several times during the game. Each player was hit with a paintball approximately 15–20 times.

Appellant brought this personal-injury action against respondent and Wal–Mart, claiming that respondent negligently and recklessly shot him in the eye with a paintball and that Wal–Mart negligently, and in violation of its own store policy, sold paintball equipment to minors. Respondent and Wal–Mart moved for summary judgment. The district court denied Wal–Mart's motion, but granted respondent's motion for summary judgment based on the theory of primary assumption of the risk. This appeal follows.

## ISSUES

1. Did the district court correctly conclude as a matter of law that appellant assumed the risk of being shot in the eye with a paintball when he played paintball without eye protection?

2. Are there genuine issues of material fact regarding whether appellant assumed the risk of being shot in the eye with a paintball when he played paintball without eye protection?

---

**1.** Appellant was not out of paintballs, but was rearming his paintball gun. As a result, the rule regarding not shooting a person who was out of paintballs did not apply.

## ANALYSIS

### I.

Appellant argues that the district court erred by concluding as a matter of law that appellant assumed the risk of being shot in the eye with a paintball when he played paintball without eye protection. On an appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997).

Minnesota law recognizes two types of assumption of the risk. *Swagger v. City of Crystal,* 379 N.W.2d 183, 184–85 (Minn.App.1985), *review denied* (Minn. Feb. 19, 1986). Secondary assumption of the risk is a form of contributory negligence. *Snilsberg v. Lake Washington Club,* 614 N.W.2d 738, 743 (Minn.App. 2000), *review denied* (Minn. Oct. 17, 2000). It applies when the defendant

> has created a hazard that is known, appreciated, and voluntarily encountered by the plaintiff, but the defendant is not relieved of his duty of care with respect to the hazard.

*Id.* Secondary assumption of the risk does not act as a complete bar to a plaintiff's recovery. *Springrose v. Willmore,* 292 Minn. 23, 24–25, 192 N.W.2d 826, 827 (1971). Instead, the relative fault of the plaintiff and defendant is apportioned under the comparative-negligence statute. *Id.*

By contrast, primary assumption of the risk acts as a complete bar to a plaintiff's recovery. *Armstrong v. Mailand,* 284 N.W.2d 343, 348 (Minn.1979). Primary assumption of the risk applies when a party voluntarily enters into a relationship in which the plaintiff assumes well-known, incidental risks. *Olson v. Hansen,* 299 Minn. 39, 44, 216 N.W.2d 124,

127 (1974). As to those risks, the defendant has no duty to protect the plaintiff. *Id.* Thus, if the plaintiff's injury arises from those risks, the defendant is not negligent. *Id.* "Primary assumption of the risk defines the limits of a defendant's duty to the plaintiff." *Andren v. White–Rodgers Co.,* 465 N.W.2d 102, 105 (Minn. App.1991), (citing *Armstrong,* 284 N.W.2d at 351), *review denied* (Minn. Mar. 27, 1991). By voluntarily entering into a situation where there are well-known, incidental risks, the plaintiff consents to look out for himself and relieve the defendant of his duty. *Id.* Whether a party has primarily assumed the risk is usually a question for the jury, unless the evidence is conclusive. *Hollinbeck v. Downey,* 261 Minn. 481, 486, 113 N.W.2d 9, 13 (1962); *Andren,* 465 N.W.2d at 105.

In Minnesota, as in other states, the assumption-of-the-risk doctrine first developed in the master/servant context to protect employers and to give maximum freedom to industrial development. *See Tiller v. Atlantic Coast Line R.R.,* 318 U.S. 54, 58–9, 63 S.Ct. 444, 447, 87 L.Ed. 610 (1943) (stating that assumption of risk first developed in the United States to protect employers); *Geis v. Hodgman,* 255 Minn. 1, 4–5, 95 N.W.2d 311, 313–15 (1959) (applying assumption of risk in master/servant context).

The distinct concept of primary assumption of the risk, which results in a complete bar of a plaintiff's claim, is a more recent development, and it is what remains of the original assumption-of-the-risk doctrine that has not been swallowed up by the principle of secondary assumption of the risk, comparative-negligence statutes, or workers' compensation laws. In *Springrose,* the Minnesota Supreme Court reaffirmed the existence of primary assumption of the risk as a valid principle in Minnesota, and an absolute bar to a plain-

tiff's recovery.[2] 292 Minn. at 24, 192 N.W.2d at 827; *see also Mailand,* 284 N.W.2d at 348–49 (stating that in *Springrose,* the supreme court held that "primary assumption of the risk remains as an absolute bar to the plaintiff's recovery"). But, Minnesota courts rarely apply primary assumption of the risk, and have found that its application is only appropriate under limited circumstances. *See, e.g., Mailand,* 284 N.W.2d at 350 (holding that landowners owe firefighters a duty of care, but that firefighters primarily assume all risks reasonably apparent to them that are a part of firefighting); *Sandstrom v. AAD Temple Bldg. Ass'n,* 267 Minn. 407, 411, 127 N.W.2d 173, 176 (1964) (holding that a "licensee primarily assumes the risk of defective conditions on property unknown to the possessor"). Minnesota courts commonly apply primary assumption of the risk in the context of spectators at sporting events. *See, e.g., Grisim v. TapeMark Charity Pro–Am Golf Tournament,* 415 N.W.2d 874, 876 (Minn.1987) (holding that spectator at golf tournament primarily assumed risk of being hit with golf ball); *Modec v. City of Eveleth,* 224 Minn. 556, 564, 29 N.W.2d 453, 457 (1947) (holding that spectator at hockey game assumed risk of being hit with puck); *Brisson v. Minneapolis Baseball & Athletic Ass'n,* 185 Minn. 507, 510, 240 N.W. 903, 904 (1932) (holding that spectator at baseball game assumed the risk of being hit by foul ball); *Jussila v. U.S. Snowmobile Ass'n,* 556 N.W.2d 234, 237–38 (Minn.App.1996) (holding that spectator at snowmobile race

primarily assumed risk of being hit by a snowmobile), *review denied* (Minn. Jan. 29, 1997); *Swagger,* 379 N.W.2d at 186 (holding that spectator at softball game primarily assumed risk of being hit by a softball).

 The basic elements of primary and secondary assumption of the risk are the same and include whether the plaintiff had (a) knowledge of the risk, (b) an appreciation of the risk, and (c) a choice to avoid the risk but voluntarily chose to take it. *Andren,* 465 N.W.2d at 104–05. To show that appellant primarily assumed the risk, respondent must demonstrate that respondent owed a duty of care to appellant and that appellant consented to relieve respondent of that duty. *See Baber v. Dill,* 531 N.W.2d 493, 495 (Minn.1995) (stating that "[i]f no duty exists there is no need to determine whether a person assumed the risk thus relieving the defendant of the duty"); *Mailand,* 284 N.W.2d at 351 (stating that for primary assumption of the risk to apply as a complete bar to the plaintiff's recovery, it must be shown that the plaintiff manifested consent, express or implied, to relieve the defendant of his duty of care). Lastly, primary assumption of the risk may not apply if appellant can show that respondent enlarged the risk to appellant. *Rusciano v. State Farm Mut. Auto. Ins. Co.,* 445 N.W.2d 271, 273 (Minn.App.1989).

## A. Knowledge and Appreciation of the Risk

 Appellant contends that the district court incorrectly concluded that he

---

**2.** In an effort to avoid confusion, many other states have chosen to abolish the concept of primary assumption of risk, and, instead, simply frame the issue as whether or not the defendant owed a duty to the plaintiff. *See, e.g., Arnold v. City of Cedar Rapids,* 443 N.W.2d 332, 333 (Iowa 1989) (stating that it is preferable to frame issues of primary assumption of the risk in terms of whether a duty is owed); *Meistrich v. Casino Arena At-*

*tractions, Inc.,* 31 N.J. 44, 155 A.2d 90, 97 (1959) (characterizing issues of primary assumption of the risk as negligence issues); *Perez v. McConkey,* 872 S.W.2d 897, 905 (Tenn.1994) (holding that the doctrine of primary assumption of the risk has no useful purpose, and adopting the common law concept of duty to analyze issues of primary assumption of risk).

knew and appreciated the risks of playing paintball without eye protection. He asserts that he had never actually played a game of paintball before the day of the accident and that his knowledge of the game from promotional literature and television was insufficient to establish true knowledge and appreciation of the risks. We disagree.

The record supports the district court's determination that appellant knew and appreciated the risk of playing paintball without eye protection. In his deposition, appellant acknowledged that he knew that a person could be injured if he or she got hit in the eye with a paintball and that people wear eye protection to prevent eye injuries from paintballs. He also acknowledged that he understood that eye protection should be worn at all times while handling a paintball gun and that he, himself, wore eye protection when he started playing the game in order to protect his eyes. Additionally, appellant testified that he had watched paintball games on television, that the players always wore eye protection, and that he had seen warnings on paintball product advertisements that eye protection should be worn at all times. The district court correctly concluded that appellant knew and appreciated the risks of playing paintball without eye protection.

**B. Chance to Avoid Risk But Voluntarily Chose to Take Risk**

 Appellant had a pair of goggles that he could have worn, but he chose not to. The district court correctly found, and appellant does not dispute, that appellant had a choice to avoid the risk of being hit in the eye with a paintball, but voluntarily chose to take the risk.

**C. Duty and Consent**

 The defendant must owe a duty of care to the plaintiff before the plaintiff can consent to relieve the defendant of that duty. *Baber*, 531 N.W.2d at 495. Neither party disputes, and the district court correctly determined, that respondent owed a duty of care to appellant in this case.

 For primary assumption of the risk to apply as a complete bar to the plaintiff's recovery, the evidence must show that the plaintiff manifested consent, express or implied, to relieve the defendant of his duty of care. *Mailand*, 284 N.W.2d at 351. In the absence of consent, secondary assumption of the risk applies. *Id.* The plaintiff consents to relieve the defendant of his duty when the plaintiff voluntarily enters into a relationship in which the plaintiff assumes well-known, incidental risks. *See Snilsberg*, 614 N.W.2d at 743 ("The defendant has no duty to protect the plaintiff from the well-known incidental risks assumed, and the defendant is not negligent if any injury to the plaintiff arises from an incidental risk."); *see also Taylor v. Hesser*, 991 P.2d 35, 38 (Okla.Civ.App.1998) (holding that "participants in the paintball game consented to the risks associated with the game" and therefore "the parties did not owe a duty of care to [plaintiff] to avoid hitting him with paintballs.").

Before Minnesota courts recognized the distinct principle of primary assumption of the risk, the Minnesota Supreme Court applied the general concept of assumption of the risk to a participant in an athletic activity. *Moe v. Steenberg*, 275 Minn. 448, 450, 147 N.W.2d 587, 588–89 (1966). In *Steenberg*, the supreme court held that an ice skater assumed the risk of injury when she fell down while skating and, as she tried to get to her feet, the defendant—who was also ice skating—fell on her, causing her injury. *Id.* The court found that assumption of the risk was a proper issue to submit to the jury, and held that "[i]t is the general rule that one who participates

in a sport assumes the risks which are inherent in it." *Id.* Since the development of primary assumption of the risk as a distinct principle in Minnesota, there have been cases involving injuries to spectators at sporting events, but no cases dealing with primary assumption of the risk in the context of participants in the events.

■ Because participants in sports enter into relationships in which they assume well-known, inherent risks, they consent to relieve other participants of their duty of care with regard to those risks. *See id.* While there is no caselaw in Minnesota dealing specifically with the issue of primary assumption of the risk in the context of paintball,[3] application of the doctrine of primary assumption of the risk is appropriate here.

■ The record shows that the risks inherent in the game of paintball are obvious and well-known. Appellant testified in his deposition that it hurt when the paintballs hit his body. He also testified that he did not always hit his target, and that he knew it was possible for one player to unintentionally hit another in the head with a paintball. Appellant testified further that paintball players are supposed to wear eye protection because there is a risk that a player can get hit in the eye, and that he wore goggles to protect his eyes when he started playing the game. Generally, the issue of whether or not a risk is inherent in a sport is a jury question, but when the evidence is conclusive, as it is here, there is no fact issue for a jury to

decide. *See Hollinbeck,* 261 Minn. at 486, 113 N.W.2d at 13 (stating that ordinarily the question of whether a party has assumed the risks of a given situation is for the jury, but when the evidence is conclusive, it becomes a question of law for the court). The evidence shows conclusively that the risk of being shot in the eye with a paintball is inherent in the game of paintball. Further, the district court correctly concluded that because appellant voluntarily chose to play paintball after the break without eye protection, knowing that getting hit in the eye with a paintball was an inherent risk of the game, he consented to relieve respondent of his duty of care with regard to that risk.

The district court correctly concluded as a matter of law that (1) appellant knew and appreciated the risk of being hit in the eye with a paintball, (2) appellant had a choice to avoid the risk but chose to take the risk, and (3) respondent owed appellant a duty of care, but appellant consented to relieve respondent of that duty. Therefore, the district court properly concluded as a matter of law that appellant primarily assumed the risk of being hit in the eye with a paintball by playing paintball without eye protection.

**D. Enlargement of the Risk**

■ Relying on *Rusciano v. State Farm Mut. Auto. Ins. Co.,* 445 N.W.2d 271 (Minn.App.1989), appellant argues that respondent enlarged the risk to appellant by failing to take the necessary precautions to

**3.** Other jurisdictions have specifically addressed the issue of assumption of the risk in the context of paintball. *See, e.g., Leonard v. Behrens,* 601 N.W.2d 76, 81 (Iowa 1999) (holding, in a case of first impression, that paintball was a contact sport to which the recklessness standard applied, under the contact sports exception to the general rule of negligence); *Hesser,* 991 P.2d at 35 (holding that player of paintball consented to the risks

of playing and relieved the defendant of his duty when the player voluntarily participated in the game); *Phi Delta Theta Co. v. Moore,* 10 S.W.3d 658, 661 (Tex.1999) (stating in a dissent to denial of a petition to hear a case involving paintball that "a defendant does not owe a duty to protect a participant from risks inherent in the sport or activity in which the participant has chosen to take part").

comply with the no-head-shots rule. Primary assumption of the risk may not apply if the defendant enlarged the risk to the plaintiff. *Id.* at 273. Appellant argues that respondent should have aimed lower or stopped playing if there was a risk that he was going to break one of the rules of their game. In *Rusciano,* we held that, although the plaintiff assumed the risk of injury when he stepped out in front of an oncoming automobile, he did not assume the enlarged risk of the driver's improper conduct and failure to brake. *Id.* at 272–73. Appellant argues that, as in *Rusciano,* respondent in this case failed to take the necessary steps to avoid breaking the rules and injuring appellant. But clarifying *Rusciano* in a later case, we noted that the driver in *Rusciano* had actually accelerated before hitting the plaintiff and stated that in order for there to be an enlargement of the risk there must be a "new risk" and "only a limited time to react." *Jussila,* 556 N.W.2d at 237.

 Here, respondent created no additional risks to appellant that were not in existence prior to appellant taking off his eye protection. It is undisputed that respondent did not aim for appellant's head or intentionally try to hit appellant in the head. There is no evidence in the record demonstrating that respondent's actions in shooting appellant in the eye were analogous to the defendant's actions in *Rusciano* when he presented a new and enlarged risk to the plaintiff by accelerating his automobile. The district court correctly determined that respondent did not enlarge the risk to appellant.

Because the district court correctly concluded as a matter of law that respondent did not enlarge the risk to appellant, the district court correctly concluded as a matter of law that appellant primarily assumed the risk of being hit in the eye with a paintball.

## II.

 Appellant asserts that the district court improperly granted summary judgment for respondent because there are genuine issues of material fact regarding whether appellant primarily assumed the risk of being hit in the eye with a paintball.

[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.

*DLH,* 566 N.W.2d at 71. No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* at 69.

 Appellant argues that there are many genuine issues of material fact in this case. He points to fact issues such as the accuracy of the paintball guns, how well respondent could see through his goggles, how much experience and knowledge appellant actually received from watching games of paintball on television and reading promotional literature. While appellant points to some fact issues, he is unable to identify any issues of fact that are material to the issue of primary assumption of the risk. When the material facts are undisputed, as they are here, and reasonable people can draw only one conclusion, assumption of the risk is a question of law for the court. *Schroeder v. Jesco, Inc.,* 296 Minn. 447, 451, 209 N.W.2d 414, 417 (1973). The district court correctly determined that there are no genuine issues of material fact and properly granted respondent's motion for summary judgment.

## DECISION

The district court properly granted respondent's motion for summary judgment based on primary assumption of the risk.

**Affirmed.**