Troy, J.
This case arises from an injury to the eye of the minor plaintiff, Amos A. Shaw. The plaintiff sustained the injury when he was shot in the eye with a paint ball launched from a paint ball gun that he and three other boys were playing with in Mattapoisett, Massachusetts. Defendants Augusta Rosenthal (“Mrs. Rosenthal”), and her sons David Gerber (“David”) and minor Daniel Gerber (“Daniel”), have each moved for summary judgment as to the plaintiffs respective claims. All three motions are before the court.
BACKGROUND
On the afternoon of Saturday, June 3, 2000, the plaintiff was shot in the right eye by a paint ball fired from a paint ball gun operated by defendant minor Caleb Martin (“Caleb”). As a result, the plaintiff sustained substantial injuries to his right eye. At the time of the shooting incident (the “incident”), the plaintiff and Caleb were playing with Daniel and minor Robert Vasseur (“Robert”).[3] On June 3, 2000, the boys were all approximately fourteen or fifteen years old. The incident occurred while the boys were playing in a private field behind Robert’s home, located at 13 Country Road in Mattapoisett. No adults were supervising the boys when the plaintiff was injured.
Daniel is the child of Mrs. Rosenthal and her ex-husband, defendant Myron Gerber (“Mr. Gerber"). Daniel resides with his mother at 19 Bishop Road, Rochester, Massachusetts, during weekdays and on every other Sunday. Daniel resides with his father at 10 Church Street in Mattapoisett on Friday nights, Saturdays, and every other Sunday. At the time of the incident, David, another son of Mrs. Rosenthal and Mr. Gerber, was twenty years old and attending the University of Massachusetts in Amherst, Massachusetts. David primarily lived at school except for college breaks and vacations. When David was home from school, he resided in a room in the basement of Mrs. Rosenthal’s home. Occasionally, David invited Daniel into his room to play video games together.
While away at school during the spring of 2000, David purchased the paint ball gun that injured the plaintiff. On or about May 12, 2000, David testified that he brought the paint ball gun home. The plaintiff contends that David stored it there for a much longer period of time. David claims that he did not tell his mother, Mrs. Rosenthal, about the paint ball gun because his mother would disapprove of him having it in her house. Instead, David hid the paint ball gun, along with a carbon dioxide (C02) cannister under some clothing in a cabinet located in the closet of his basement bedroom. He also hid a protective mask under some clothes, which was located about four or five feet from the other paint ball items. The parties dispute whether ammunition (paint balls) was stored along with the other paint ball items on June 2, 2000. David did not tell his younger brother, Daniel, about the paint ball gun or its whereabouts. Mrs. Rosenthal claims that at no time prior to June 3, 2000, did she have any knowledge that a paint ball gun was in her home or in the possession of any of her sons.
Daniel testified that on Friday, June 2, 2000, he found the paint ball gun, carbon dioxide cannister, and paint balls while looking for video games in David’s room. However, Daniel did not discover the protective mask. David testified that he kept a lock on the door to his room whenever he was not at home. However, he cannot recall if the door to his room was locked on Friday, June 2, 2000. Neither David, nor Mrs. Rosenthal, were in the house at the time Daniel found the paint ball equipment. Daniel took the paint ball items to his father’s home in Mattapoisett, where he spent the weekend. Mr. Gerber’s home in Mattapoisett is located next door to the home of the plaintiff.
*189 On Saturday, June 3, 2000, Daniel met the plaintiff and the other two boys in the yard of the plaintiffs home. The plaintiffs mother, Susan Shaw (“Mrs. Shaw”), saw the paint ball gun in Daniel’s partially open backpack. Mrs. Shaw told the boys that she did not want them using the paint ball gun in her yard. Robert suggested that they could use the paint ball gun at his house because his parents were not home. The four boys then went to a field located behind Robert’s house. Daniel apparently loaded the gun with paint balls and each took a turn shooting the paint ball gun at various targets, such as a shed and trees.
The boys then discussed playing a game of “Capture the Flag,” during which the boys planned to shoot at each other. The boys’ testimony regarding their conversations about how the game would be played and the risks involved conflict. For example, Daniel claims that the plaintiff suggested the game by jumping around and saying “shoot me, shoot me.” The plaintiff denies this claim. Instead, the plaintiff avers that the boys decided to split into two teams, with one team trying to reach a skateboard (which acted as the flag) while the other team tried to stop them from reaching the skateboard by hitting them with paint balls. Caleb testified that he expressed concern about shooting each other without eye goggles or heavy clothing.
Then, while Daniel was picking up some dropped paint balls, he handed the gun to Caleb. Caleb began shooting the paint ball gun in the direction of the plaintiff. The plaintiff claims he was crawling through the heavy brush in the field when he was struck in the eye. Daniel alleges that the plaintiff was jumping up and down saying “shoot me, shoot me” just before he was injured. Both Caleb and Daniel heard the plaintiff scream immediately after Caleb had fired the paint ball gun in the direction of the plaintiff. The plaintiff claims the paint ball did not explode when it struck him.
The plaintiff, by and through his parents, alleges that the June 3, 2000 incident was not the first time Daniel was in possession of a paint ball gun. In her deposition, Mrs. Shaw alleges that approximately six months to a year and a half prior to June 3, 2000, she witnessed Daniel and her son holding two paint ball guns in the yard of her home. Mrs. Shaw claims that Daniel was showing the plaintiff how to load the guns with the paint balls. Mrs. Shaw then supervised the boys while they shot paint balls at a fence in her yard. She did not inform Mrs. Rosenthal about this incident.
Mrs. Rosenthal testified that Daniel never told her that he ever possessed a paint ball gun. According to Mrs. Rosenthal, Daniel did tell her that he went to paint ball “ranges” with a friend when he stayed at his father’s home. Daniel also told her that whenever he did go to a paint ball range, he was accompanied by someone over the age of eighteen. Daniel allegedly explained to his mother that the paint ball range required someone over eighteen years of age to rent the equipment and protective gear (including eye goggles) as well as to sign waiver forms. While at a paint ball range, Daniel testified that he shot paint balls at targets, not people. Mrs. Rosenthal alleges that she told Daniel that she did not like the idea of him participating in paint ball activities and contacted Mr. Gerber to express her concerns. Mr. Gerber allegedly reassured Mrs. Rosenthal that whenever their son went to a paint ball range, Mr. Gerber or another parent accompanied Daniel.
Daniel apparently told his mother that some of his friends (not Caleb or the plaintiff) owned paint ball guns. Daniel also told Mrs. Rosenthal that when he stayed with his father, he participated in shooting paint balls at trees and man-made targets in locations other than paint ball ranges. However, Daniel told his mother that an adult was always present to supervise these activities. Mrs. Rosenthal testified that she did not forbid Daniel to participate in these activities but expressed her concerns about safety to Daniel and Mr. Gerber.
As a result of being shot in the eye, the plaintiff claims that he sustained substantial physical as well as emotional damages. He filed suit, by his parents and next friends, on June 19, 2001, and amended his complaint on or about March 12, 2002.
DISCUSSION
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id.
“Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Corr., 390 Mass. at 422 (citations omitted). The function of summary judgment is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Sup.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995).
“Summary judgment is seldom sought or granted in negligence actions.” Manning v. Noble, 411 Mass. 382, 388 (1991), quoting Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991). This is because negligence claims so often involve disputed questions of fact. Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor Coll., 389 *190 Mass. 47, 65 (1983). However, even in negligence actions, summary judgment is appropriate “if no rational view of the evidence permits a finding of negligence.” Roderick v. Brandy Hill Co., 36 Mass.App.Ct. at 949.
I. Daniel Gerber’s Motion for Summary Judgment
Count VI of the plaintiffs complaint alleges that Daniel was negligent in making the paint ball gun available to Caleb, who admits to shooting the paint ball gem and injuring the plaintiff. The plaintiff also claims in Count VII of his complaint that Daniel violated G.L.c. 269, §§12A, 12B, and is negligent per se. Daniel moves for summary judgment on both claims against him and argues that merely giving the paint ball gun to Caleb cannot form the basis of a common-law negligence action. In addition, Daniel argues that G.L.c. 269, §§12A, 12B, are inapplicable to the possession and/or sale of paint ball guns in Massachusetts. The court will address each of these claims in turn.
A. Violation of G.L.c. 269, §§12A, 12B (Count VII)
The plaintiff claims Daniel violated G.L.c. 269, §12B,[4] by possessing the paint ball gun. The plaintiff also alleges that Daniel violated G.L.c. 269, §12A,[5] by furnishing the paint ball gun to Caleb. Daniel contends that a paint ball gun does not constitute an “air rifle or so-called BB gun” for purposes of §§12A, 12B. Therefore, Daniel argues that he is entitled to summaiy judgment as a matter of law on Count VII.
Whether a paint ball gun constitutes an “air rifle or so-called BB gun” under §§12A, 12B is a question of first impression in the Commonwealth. The plaintiff opposes Daniel’s motion for summary judgment and argues that the court should interpret “air rifle or so-called BB gun” as referring to two distinct classifications of weapons. As such, the plaintiff urges the court to hold, as a matter of law, that a paint ball gun is a type of “air rifle.”
In support of interpreting an air rifle and a BB gun as separate and distinct, the plaintiff relies on Commonwealth v. Fenton. Commonwealth v. Fenton, 395 Mass. 92, 92-95 (1985). In Fenton, the Supreme Judicial Court held that all types of air guns are exclusively regulated statutorily by G.L.c. 269, §12B. Id. at 92-93. The defendant, an adult, was charged and convicted of unlawfully carrying a firearm in violation of G.L.c. 269, §10(a). Id. at 92. The weapon the defendant possessed was a Crossman 38T, .22 caliber Pellgun.[6] Id. at 94 n.4. The weapon was a revolver powered by a carbon dioxide canister as opposed to a BB gun functioning by air pressure generated by manual cocking. Id. at 93, 95. The Fenton Court overturned the defendant’s conviction, holding that “(p)ossession of ‘any type of air gun,’ by either an adult or a minor is regulated exclusively by G.L.c. 269, §12B.” Id. at 95.
While the Court in Fenton held that any type of air gun is exclusively regulated by G.L.c. 269, §12B, the Fenton Court did not conclude that §12B prohibits the possession of any type of air gun by a minor without adult supervision or a sporting or hunting license. See id. at 92-95. To do so would require a minor to have adult supervision or a sporting or hunting license when possessing a water pistol, “Nerf” gun, or other harmless type of air gun.
Instead, this court holds that the terms “air rifle” or “so-called BB gun” refer to the same type of weapon and are not two distinct classifications of weapons. In other words, a “so-called BB gun” is merely the colloquial name for an air rifle. The modifying words “so-called” in the statute supports this interpretation. See G.L.c. 269, §12B. Moreover, a BB gun projects a metallic pellet designed to pierce and penetrate whatever the pellet strikes. Conversely, gelatin paint balls, filled with colored vegetable oil, are designed to break open and splatter upon impact. Leonard v. Behrens, 601 N.W.2d 76, 77 (Iowa 1999). This is not to say that a paint ball will always splatter upon impact or that the use of a paint ball gun does not present dangers. However, if the Legislature intended to require a license or adult supervision for possession of a paint ball gun by a minor, it should have expressly done so. See Commonwealth v. Fenton, 395 Mass. at 95; Commonwealth v. Rhodes, 389 Mass. 641, 646 (1983).
The court, while recognizing support for both interpretations of § 12B, concludes that “[a] criminal statute must be sufficiently explicit to give clear warning as to proscribed activities, with any ambiguities to be construed strictly . . .,” even though it is sought to be applied here to a civil case. Commonwealth v. Fenton 395 Mass. at 95, quoting Commonwealth v. Rhodes, 389 Mass. at 646-47. Thus, this court adopts an interpretation of the statute that gives full meaning to the apparent legislative intent without running afoul of the doctrines of strict construction or unconstitutional vagueness. Commonwealth v. Rhodes, 389 Mass. at 647. Therefore, G.L.c. 269, §12B does not prohibit a minor, such as Daniel, from possessing a paint ball gun without adult supervision or a license.
Likewise, General Laws c. 269, §12A, prohibits selling or furnishing an “air rifle or so-called BB gun” to a minor. G.L.c. 269, § 12A. For the same reasons as above, the court concludes that § 12A does not prohibit Daniel from selling or furnishing a paint ball gun to another minor. Accordingly, Daniel’s motion for summary judgment as to Count VII of the plaintiffs complaint must be ALLOWED.
B. Common-law Negligence (Count VI)
In order for the plaintiff to prevail on his claim of negligence against Daniel, he must demonstrate a legal duty owed by Daniel to the plaintiff, and a breach of that duty proximately resulting in the plaintiffs injury. Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). Daniel argues that the plaintiff cannot *191 meet this standard because he was not the owner of the paint ball gun and because he was not the person who injured the plaintiff. On the other hand, the plaintiff contends that Daniel provided the paint ball gun to Caleb, who ultimately injured the plaintiffs right eye.
Since Daniel provided the paint ball gun for the boys’ “Capture the Flag” game, but was not the person who injured the plaintiff, liability may only attach if Darnel negligently entrusted the paint ball gun to Caleb. In other words:
a person who owns or controls an instrumentality which he knows, or with reasonable care should know, is dangerous in its nature or is in a dangerous condition and who disposes of it in a manner that he foresees, or in the exercise of reasonable care ought to foresee, will probably carry that thing into contact with some person, known or unknown, who will be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him.
Mann v. Cook, 346 Mass. 174, 176-77 (1963).
No court in Massachusetts has decided whether a paint ball gun constitutes a “dangerous instrumentality” for purposes of a common-law tort action. Yet, this is the question the parties now put squarely before the court. As such, this court holds that a paint ball gun, when used by unsupervised minors or by participants not wearing protective gear, including eye goggles, does constitute a dangerous instrument or weapon.
There is evidence in the record that supports this conclusion. First, Daniel testified that someone over the age of eighteen has to be present with minors at paint ball ranges in Massachusetts. On behalf of any minors seeking to participate in paint ball activities at such ranges, an adult must rent the paint ball guns and protective gear, including goggles. Such an adult is also required to waive liability against the paint ball range in the event that any minor or adult is injured while using the paint ball equipment. In addition, the plaintiff has alleged that the paint ball that struck him in the eye did not break apart, releasing the “paint” inside.[7] Daniel also testified that he is aware that not all paint balls explode upon impact. This evidence, at the very least, suggests that there are inherent dangers in shooting paint balls at other people, especially if the people participating in the activity are minors not wearing protective equipment.
Guidance from other jurisdictions deciding matters relating to paint ball injuries also lends credence to the court’s conclusion that a paint ball gun constitutes a dangerous instrumentality. This court notes that the two respective plaintiffs in Leonard v. Behrens and Schneider v. Erickson, were both minors who were injured when each was struck in the eye by a paint all. Leonard v. Behrens, 654 N.W.2d at 78; Schneider v. Erickson, 654 N.W.2d 144, 147 (Minn.App. 2002). Neither plaintiff was wearing protective goggles at the time they were injured. Id. Furthermore, in Schneider, the plaintiff testified that when the carbon dioxide cannister that powers the paint ball gun is not fresh, the paint ball gun’s accuracy may be diminished. Schneider v. Erickson, 654 N.W.2d at 147. The Schneider Court also found that local stores in Minnesota, such as Wal-Mart, have policies prohibiting the sale of paint ball equipment to anyone under eighteen years of age. Id. at 146. In addition, the Court in Phi Delta Theta Co. v. Moore, acknowledged that paint ball activities do present inherent risks to one’s physical safely. Phi Delta Theta Co. v. Moore, 10 S.W.3d 658, 660-61 (Tex. 1999). Therefore, this court concludes that a paint ball gun constitutes a dangerous instrumentality when the participants using such guns are unsupervised minors or are persons not wearing protective gear.
The court now turns to the merits of Daniel’s summary judgment motion. Daniel’s argument that negligent entrustment cannot arise because he did not own the paint ball gun or did not have permission to control the paint ball gun is unavailing. The parties do not dispute that Daniel did not control the paint ball gun by ownership or through permission by his older brother. However, Daniel did, at the critical time, have physical dominion over the paint ball gun, albeit through an act of usurpation, filching the paint ball gun. See Salamone v. Riczker, 32 Mass.App.Ct. 429, 431 (1992). Daniel controlled the use of the paint ball gun and claimed the right to decide who else might shoot it. The court views control for purposes of negligent entrustment in terms of the ability to determine whether the other boys could use the paint ball gun. As such, the undisputed facts demonstrate that Daniel had complete control over the use of the paint ball gun on June 3, 2000.
However, it is unclear whether Daniel appreciated the danger in allowing Caleb, an untrained and inexperienced paint ball user, to shoot the paint ball gun. See Salamone v. Riczker, 32 Mass.App.Ct. at 433. There is evidence that Daniel assembled the paint ball gun and loaded paint balls into it before each of the boys took a turn shooting the paint ball gun. At some point, the boys decided to shoot at each other while playing a game of “Capture the Flag.” The boys’ deposition testimony conflicts in regard to how the decision to shoot at each other was made as well as each boy’s level of appreciation of the risks associated with firing the paint ball gun at each other without taking safety precautions. Daniel testified that the discussion about shooting the paint ball gun at each other arose when the plaintiff began running around saying “shoot me, shoot me.” The plaintiff denies this allegation.
Daniel also testified that the boys had not split up into teams, but rather that all four boys were playing against each other. Caleb testified that he could not remember if the boys discussed how the game was *192 going to be played but that his understanding was that two boys would hide while the other two tried to shoot at them. The plaintiffs testimony is similar to Caleb’s in that he believed that the game would be played in teams. Caleb also testified that there was a discussion about whether it would hurt if hit with a paint ball. However, his testimony does not reveal who participated in this discussion. Caleb also allegedly expressed concern to the other boys that someone might get hurt and that the boys should wear goggles and heavier clothing. But again, it is unclear which boys participated in that discussion.
Each boy does agree, however, that at some point, the boys agreed to shoot at each other and that Caleb asked Daniel to use the paint ball gun. Daniel testified that he gave Caleb the paint ball gun while he was picking up paint balls that had fallen on the ground. Caleb began shooting in the direction of the plaintiff when Daniel and Caleb heard the plaintiff scream.
As such, there are genuine issues of material fact as to the events that led up to the plaintiffs injury. Therefore, the conflicting evidence is sufficient for the plaintiff to survive summary judgment and have a jury decide the question of whether Daniel, at age fourteen, appreciated the danger inherent in allowing Caleb to shoot the gun at the other boys.
A jury must also decide whether there is enough evidence to support a finding that any potential negligence attributable to Daniel proximately caused the plaintiffs injuries. See Salamone v. Riczker, 32 Mass.App.Ct. at 432-33. Caleb’s admission that he discussed the risks associated with shooting the paint ball gun at each other without wearing goggles and heavy clothing could be considered as an intervening cause. However, there is also evidence, taken in the light most favorable to the plaintiff, that Daniel’s experience with paint ball activities was far greater than Caleb’s. Thus, Daniel’s motion for summary judgment on the plaintiffs claim of negligent entrustment must be DENIED.
II. David Gerber’s Motion for Summary Judgment
Like his claims against Daniel, the plaintiff has brought both a negligence per se claim, based on a violation of G.L.c. 269, §§12A, 12B (Count XI), and a common-law negligence claim (Count X) against Daniel’s older brother David. For the reasons set forth in Part 1(A), infra, David’s motion for summary judgment on the plaintiffs negligence per se claim must be allowed. Therefore, Count XI is dismissed. Concerning Count X, David’s motion for summary judgment as to the plaintiffs claim for common-law negligence must be denied because a genuine issue of material fact exists as to whether David was negligent in storing the paint ball gun at his mother’s house.
The court accepts the principle that, “in particular circumstances, a supplier may be liable for harm caused after the supplier has knowingly placed property in the hands of an incompetent person.” Kyte v. Philip Morris Inc., 408 Mass. 162, 169 (1990); see Leone v. Doran, 363 Mass. 1, 13 n.3 (1973) (motor vehicle); see also Michnik-Zilberman v. Gordon’s Liquor, Inc., 390 Mass. 6, 10-11 (1983) (sale of liquor to minor). Both David and Daniel testified that Daniel had no knowledge that David owned a paint ball gun until Friday, June 2, 2000. There is no evidence that David and Daniel had ever previously discussed the existence of David’s paint ball gun or that David ever gave Daniel permission to use the paint ball gun. In short, there has been no evidence of permission or agreement, express or implied, between David and Daniel. Therefore, it is beyond dispute that David did not knowingly entrust the paint ball gun to his brother Daniel.
However, the plaintiff also claims that David’s negligence arises from his lack of care in storing the paint ball gun behind some clothes in the closet of his room. The plaintiff relies on Sojka v. Dlugosz, for the proposition that a defendant, absent a knowing entrustment, can still be held liable for negligence because the defendant had “left [a dangerous instrumentaliiy][8] easily accessible to those too young and inexperienced to be entrusted with it...” Sojka v. Dlugosz, 293 Mass. 419, 423 (1936).
In Sojka, a father owned a rifle. Id. at 420. The father did not explain the dangers of the weapon nor did he give his sons any instructions not to use the rifle without his supervision. Id. at 423. The father left the gun in the pantry of his home and the ammunition in the pocket of his sweater, which he left hanging in the living room. Id. at 420. The father did not instruct his wife to take watch of the rifle. Id. at 420, 423. One day, the sons took the rifle and ammunition while their father slept. Id. at 421. An accidental shot from the rifle ended up injuring another neighborhood boy. Id. The Sojka Court held that this evidence could allow a juiy to find that the father showed a culpable disregard for the safety of others touching the highly dangerous instrumentaliiy. Id. at 423.
Whether David’s actions in storing the paint ball gun show a culpable disregard for the safety of others, as displayed by the father in Sojka, cannot be determined on summary judgment. See Sojka v. Dlugosz, 293 Mass. at 419-23. David testified that although he occasionally invited Daniel into his room to play video games, he kept the entrance to his room locked when he was not there. The summary judgment record does not reveal if the door to his room was locked on Friday June 2, 2000. The parties also dispute whether David stored the ammunition to the paint ball gun along with the gun and cannister. It is also unclear how long David had stored the paint ball gun in his room and whether he was away at school on June 2, 2000. Thus, even though David allegedly kept knowledge of the paint ball gun’s existence a secret, disputed facts on summary judgment, when taken in the light most *193 favorable to the plaintiff, create a genuine issue as to whether the paint ball gun and/or ammunition were easily accessible to Daniel.
Therefore, the court cannot say that, as a matter of law, David did not show a culpable disregard of the safety of others who might come in contact with the paint ball gun. Such a determination should be reserved for a jury weighing the evidence. At trial, the plaintiff will also have to prove to a jury that David’s storing of the paint ball gun and/or paint balls was not only negligent, but the proximate cause of the plaintiffs injuries. See Sojka v. Dlugosz, 293 Mass. at 423.
Accordingly, David’s motion for summaryjudgment on Count XI must be ALLOWED and his motion for summaryjudgment on CountX must be DENIED.
III. Augusta Rosenthal’s Motion for Summary Judgment
Count IX of the plaintiffs complaint alleges that Mrs. Rosenthal negligently allowed Daniel to possess and use a paint ball gun without adult supervision. The plaintiff further contends that Mrs. Rosenthal’s negligence was a direct and proximate cause of his injuries. Mrs. Rosenthal moves for summaryjudgment and argues that the plaintiff has no reasonable expectation of proving a negligent supervision or negligent discipline claim at trial. The court agrees with Mrs. Rosenthal for the following reasons.
In Sabatinelli v. Butler, the Supreme Judicial Court stated that the “duty of parental discipline arises when the parent knows or should have known of the child’s propensity for the type of harmful conduct complained of, and has an opportunity to take reasonable corrective measures.” Sabatinelli v. Butler, 363 Mass. 565, 569 (1973), quoting Caldwell v. Zaher, 344 Mass. 590, 592 (1962).
The plaintiff opposes Mrs. Rosenthal’s motion for summary judgment and contends that there is a genuine issue of material fact as to whether Mrs. Rosenthal knew or should have known that her son David was storing a paint ball gun in her home. Second, the plaintiff also contends that summary judgment is not warranted because there is a genuine issue of material fact as to whether Mrs. Rosenthal knew or should have known that Daniel had a propensity to possess and operate paint ball guns without adult supervision. Third-party defendant and next friend to the plaintiff, Mrs. Shaw, also opposes summary judgment and argues that there is a genuine issue of material fact as to whether Mrs. Rosenthal knew that Daniel had shot a paint ball gun at persons (and not targets) before June 3, 2000.
When presented with a motion for summary judgent, the court must consider the pleadings, deposions, answers to interrogatories, admissions on file, d any affidavits to determine whether summary udgment is appropriate. Mass.R.Civ.P. 56(c), McGuinness v. Cotter, 412 Mass. 617, 620 (1992). Here, Mrs. Rosenthal testified in her deposition that she had no knowledge, before June 3, 2000, that David was storing the paint ball gun in her home. David testified in his deposition that he did not tell his mother that he had the paint ball gun in her home because he knew his mother would disapprove. David also testified that he hid the paint ball gun in his room under some clothing in order to conceal it from his mother and brothers. Daniel testified in his deposition that he found the paint ball gun under some clothes in David’s closet and took the gun without his mother’s or David’s knowledge or permission.
In addition, Mrs. Rosenthal testified that, although Daniel had previously informed her that he participated in paint ball activities at paint ball ranges and other locations, Daniel also told her that an adult was always present to supervise him and his friends. Mrs. Rosenthal further testified that Daniel told her that these paint ball activities only included shooting at targets and trees, and only occurred on the weekends when he went to stay with his father, Mr. Gerber. Mrs. Rosenthal contends that she expressed her concerns about Daniel’s safety to Mr. Gerber and that Mr. Gerber allegedly allayed her fears by reassuring her that an adult was always present when Daniel participated in paint ball activities.
The plaintiff and Mrs. Shaw attempt to rebut the above testimony by alleging that the testimony of Mrs. Rosenthal is not credible. Merely disputing the veracity of Mrs. Rosenthal’s testimony does not necessarily make such dispute “genuine.” More importantly, to properly place the credibility of Mrs. Rosenthal’s testimony at issue, and survive summaryjudgment, the plaintiff and Mrs. Shaw must put forth at least a scintilla of evidence that casts doubt on whether or not Mrs. Rosenthal knew or should have known the paint ball gun was in her home, whether Mrs. Rosenthal knew or should have known that Daniel had a propensity to possess or use a paint ball gun without adult supervision, and whether Mrs. Rosenthal knew or should have known that Daniel had allegedly shot at people with a paint ball gun prior to June 3, 2000. Neither the plaintiff nor Mrs. Shaw have presented any such evidence, even though extensive discovery has taken place in this case.
Instead, the plaintiff relies on the naked proposition that a jury must weigh the credibility of Mrs. Rosenthal’s testimony. Without more, the plaintiffs assertion, if adopted by the court, would make the granting of summary judgment impossible in almost all cases. Thus, after viewing the evidence in the light most favorable to the plaintiff, the court finds that a reasonable jury could not conclude that Mrs. Rosenthal knew or should have known that a paint ball gun was in her home. Likewise, after considering the evidence “with an indulgence in the [plaintiffs] favor," Conley v. Massachusetts Bay Transp. Auth., *194 405 Mass. 168, 173 (1989), a rational jury could not conclude that Mrs. Rosenthal, prior to June 3, 2000, knew or should have known that Daniel used or possessed a paint ball gun without adult supervision or that he had allegedly shot at people rather than at trees and targets.
Moreover, Mrs. Shaw testified in her deposition that six months to a year and a half before the incident, she witnessed Daniel showing the plaintiff how to load two paint ball guns in the yard of her home. Mrs. Shaw intervened and proceeded to supervise the two boys while they shot paint balls at a fence. However, by her own admission, she did not inform Daniel’s parents of that incident. Neither did Mrs. Shaw inform Daniel’s parents that their son was in possession of a paint ball gun on June 3, 2000, even though Mrs. Shaw saw him with it in her yard hours before her son was injured. If Mrs. Rosenthal had been aware that Daniel possessed and was using a paint ball gun without adult supervision prior to the date of the plaintiffs injuries, a genuine issue of material fact would exist as to whether Mrs. Rosenthal knew or should have known that Daniel possessed a paint ball gun or had a propensity to use a paint ball gun without proper supervision on the date at issue. Contra, Gudziewski v. Stemplesky, 263 Mass. 103, 104-06 (1928).[9] However, it is undisputed that such information did not reach Mrs. Rosenthal before the plaintiff was injured. Therefore, Mrs. Rosenthal’s motion for summary judgment on the plaintiffs claim of negligent supervision must be ALLOWED.
ORDER
For the foregoing reasons, Daniel Gerber’s motion for summary judgment on Count VI of the plaintiffs complaint is DENIED. Daniel Gerber’s motion for summary judgment on Count VII of the plaintiffs complaint is ALLOWED and Count VII is dismissed.
It is further ORDERED that David Gerber’s motion for summary judgment on Count X of the plaintiffs complaint is DENIED. David Gerber’s motion for summary judgment on Count XI of the plaintiffs complaint is ALLOWED and Count XI is dismissed.
It is further ORDERED that Augusta Rosenthal’s motion for summary judgment on Count IX of the plaintiffs complaint is ALLOWED and Count IX is dismissed.

 Robert Vasseur is not a party to this action.

 General Laws c. 269, §12B (1996 ed.), reads as follows:
No minor under the age of eighteen shall have an air rifle or so-called BB gun in his possession while in any place to which the public has a right of access unless he is accompanied by an adult or unless he is the holder of a sporting or hunting license and has on his person a permit from the chief of police of the town in which he resides granting him the right of such possession. No person shall discharge a BB shot, pellet or other object from an air rifle or so-called BB gun into, from or across any street, alley, public way or railroad or railway right of way, and no minor under the age of eighteen shall discharge a BB shot, pellet or other object from an air rifle or BB gun unless he is accompanied by an adult or is a holder of a sporting or hunting license. Whoever violates this section shall be punished by a fine of not more than one hundred dollars, and the air rifle or BB gun or other weapon shall be confiscated. Upon a conviction of a violation of this section the air rifle or BB gun or other weapon shall, by the written authority of the court, be forwarded to the colonel of the state police, who may dispose of said article in the same manner as prescribed in Section ten.

 General Laws c. 269, §12A (1959 ed.), provides:
Whoever sells to a minor under the age of eighteen or whoever, not being the parent, guardian or adult teacher or instructor, furnishes to a minor under the age of eighteen an air rifle or so-called BB gun, shall be punished by a fine of not less than fifty nor more than two hundred dollars or by imprisonment for not more than six months.

 The motion judge found that the gun has a barrel length of less than sixteen inches, can fire a .22 caliber lead flat-nose pellet or a .22 caliber pointed-nose pellet, and has a range of 300 yards. Commonwealth v. Fenton, 395 Mass. at 94 n.4.

 In Leonard v. Behrens, the Supreme Court of Iowa noted that paint balls are “gelatin capsules filled with colored vegetable oil which are intended to break on contact.” Leonard v. Behrens, 601 N.W.2d at 77.

 As discussed in Part 1(B), infra, a paint ball gun constitutes a dangerous instrumentality when used by unsupervised minors.

 In Gudziewski v. Stemplesky, the plaintiff, a ten-year-old boy, was shot in the eye while playing in the back yard of his house. Gudziewski v. Stemplesky, 263 Mass. at 104. The plaintiff testified that he saw another boy, Stephen Stemplesky, placing a BB gun through a window of Stemplesky’s house just before the plaintiff was shot in the eye. Id. Stemplesky’s house was located across the street from the plaintiffs home. Id. The plaintiff also testified that he had seen Stephen with a BB gun two weeks prior to being shot. Id.
On the plaintiffs claim that Stephen’s parents were guilfy of negligent supervision of their son, the Court found that the trial judge was correct in not directing verdicts in favor of Stephen’s parents. Id. at 106. The Court, while acknowledging that there was no evidence that Stephen’s parents bought or furnished the BB gun or ammunition, found that evidence at trial had been presented that would allow a jury to find that Stephen’s parents had actual knowledge that Stephen had an air gun and used it “indiscriminately and mischievously.” Id. at 105-06.
A jury could draw this conclusion because the plaintiff presented evidence that Stephen’s mother had seen Stephen with the gun prior to the plaintiff being shot and knew that Stephen had used the BB gun to shoot at clothes she had hung in the yard to dry. Id. at 106. Evidence was also presented that Stephen had shot off the BB gun in the street near his father’s store. Id. On this cumulative evidence, the Court concluded that Stephen’s parents could be found to have known that their son was in possession of and was using the BB gun. Id.