Aja BJERKE, Appellant,

v.

Suzette E. JOHNSON, Respondent,

Kenneth D. Bohlman, Defendant.

No. A06–117.

Court of Appeals of Minnesota.

Feb. 13, 2007.

186

Dennis Patrick Moriarty, Kevin J. Wetherille, Jaspers, Moriarty & Walburg, P.A., Shakopee, MN, for appellant.

John M. Riedy, Jorun Groe Meierding, Maschka, Riedy & Ries, Mankato, MN, for respondent.

Eric Olson, Appelman & Olson, P.A., Minneapolis, MN, for defendant.

Considered and decided by KALITOWSKI, Presiding Judge; LANSING, Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

This appeal arises out of the sexual abuse of appellant Aja Bjerke, a teenager, by defendant Kenneth Bohlman. Bohlman was the live-in boyfriend of respondent Suzette Johnson, the woman to whom Bjerke had been entrusted by her parents. Bjerke appeals from summary judgment dismissing her negligence claim against Johnson, arguing that the district court erred by concluding that Johnson did not have a duty to protect her from Bohlman's criminal acts. Bjerke also challenges an order dismissing her negligence claim on the ground that she assumed the risk of her injuries as a matter of law and a prior order granting Johnson's request for a bifurcated trial and denying Bjerke's motion to amend her complaint to include a

punitive-damages claim. We affirm in part, reverse in part, and remand.

## FACTS

In June 2002, Bohlman was charged with five counts of criminal sexual conduct, with each count covering a specific period of time. Also, appellant Aja Bjerke filed a civil suit against Johnson and Bohlman, alleging, inter alia, that between the fall of 1998 and the spring of 2001, Johnson assumed a legal duty to protect her from physical and sexual abuse; and that during that time period, when appellant was a minor, Bohlman repeatedly physically and sexually assaulted her at various locations, including at Johnson's residence in rural Lake Crystal.

Johnson owns and operates a horse business known as Island Farm located near Lake Crystal, which consists of a house, barns, and other outbuildings on about 14 1/2 acres of land. Johnson practices as an attorney in the Lake Crystal–Mankato community. Kenneth Bohlman worked as the manager of a local drug store and began living with Johnson in the house on Island Farm sometime in 1983 or 1984.

From 1972 through 1987, Johnson was approved by the Hennepin County Vocational School and the University of Minnesota at Waseca to provide an 8–12 week training experience for students enrolled in horse-management classes. The students, who ranged in age from 18 to 21, would learn the horse business and live at Island Farm. Additionally, Johnson provided riding lessons for 13– to 18–year olds, who would spend up to a week or two at the farm.

During the relevant time period, Johnson worked full time as an attorney. Bohlman and his assistant, Andrea Pidde, operated a separate business at Island Farm providing horseback-riding lessons to the public. Johnson testified that Bohlman had heart valve surgery in August 1994, and in early 1995, she became aware that he was impotent. She testified that she had not had a sexual relationship with Bohlman since 1995 and that they began sleeping in separate bedrooms in 1999.

Bjerke met Bohlman at a horse show in 1995, and began taking horseback-riding lessons from him. On those occasions, her parents would bring her and her horse to Island Farm for the lessons. During the summer of 1997, Bjerke had her horse stabled at Island Farm so that her parents would not be required to transport the horse back and forth for each riding lesson. At that time, Johnson asked her parents if Bjerke might enjoy spending a week or so at Island Farm, as other minors had in years past. Bjerke spent about two and one-half weeks at Island Farm that summer. During the summers of 1998 and 1999, Bjerke stayed at Island Farm and received horseback-riding lessons from Bohlman and Pidde, and in the fall of each year, she returned to New Prague to reside with her parents and attend school. During the school year, she visited Island Farm on weekends and occasionally attended horse shows with Johnson, Bohlman, and Pidde. In April 2000, Bjerke began staying full time at Island Farm, where she resided until approximately October 2001.

During Bjerke's stay at Island Farm, Johnson understood her role was to provide Bjerke with room and board. Although Bjerke did not pay for staying at Island Farm, she did perform chores, which included feeding the horses and cleaning the stalls. She also attended horse shows with Johnson, Bohlman, and Pidde, together with any other children who had horses at Island Farm.

In October 2001, Bjerke called her father and stated that she was afraid of

Bohlman and that he had been physically violent with her. A few days later, Steven Bjerke contacted Johnson and made arrangements to pick up Bjerke's belongings. While at the farm, he discovered that some of Bjerke's personal belongings, including items of her clothing and school books, were in Bohlman's room and confronted Johnson as to what was going on. Johnson made no oral response to the question. Additional evidence showed that Bohlman had Bjerke's course schedule, check blanks, graduation cards, and a pair of Bjerke's underwear in his room.

In October 2004, Bohlman was convicted of three counts of criminal sexual misconduct and acquitted of the two remaining counts. The convictions related to conduct that occurred before April 20, 1999, which was Bjerke's 16th birthday. At the criminal proceeding, Bjerke testified that Bohlman physically and sexually abused her at Island Farm when she was 14 years old and continued until she left the farm in October 2001. Appellant's conviction and sentence were affirmed by this court. *State v. Bohlman*, No. A05–207, 2006 WL 915765 (Apr. 11, 2006), *review denied* (Minn. July 19, 2006).

In the civil proceeding, the district court ruled on a number of pretrial motions. Specifically, the court granted Bjerke's motion to amend her complaint to request punitive damages against Bohlman, but denied the same motion against Johnson, denied Bjerke's motion to strike the defense of comparative negligence, and granted Johnson's motion for separate trials against Johnson and Bohlman. In September 2005, Johnson moved for summary judgment, arguing that there was no duty owed to Bjerke and that Bjerke voluntarily assumed the risk of her injuries. Appellant opposed the motion, arguing that Johnson owed her a legal duty to protect her from sexual abuse by Bohlman.

Following a hearing, the district court granted Johnson's motion for summary judgment. The district court then ordered entry of a final partial judgment. This appeal followed.

## ISSUES

1. Did the district court err by concluding as a matter of law that Johnson did not have a duty to protect Bjerke from Bohlman's sexual abuse?

2. Did the district court err by concluding as a matter of law that Bjerke assumed the risk of her injuries?

3. Did the district court abuse its discretion by granting Johnson's motion for a bifurcated trial and by denying Bjerke's motion to amend her complaint to include a punitive-damages claim?

## ANALYSIS

### I.

Aja Bjerke challenges the district court's grant of summary judgment dismissing her negligence claim against respondent Suzette Johnson, arguing that genuine issues of material fact remain as to whether Johnson negligently failed to protect her from respondent Kenneth Bohlman's physical and sexual abuse. We agree.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). When reviewing a summary judgment, this court examines whether genuine issues of material fact remain for trial and whether the district court properly applied the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d

108, 112 (Minn.1992). To raise a genuine issue of material fact, the party opposing summary judgment must present only sufficient evidence to support its claims; substantial evidence is not required. *Schroeder v. St. Louis County,* 708 N.W.2d 497, 507 (Minn.2006). But evidence that creates merely a "metaphysical doubt as to a factual issue and that is not sufficiently probative with respect to an essential element of [the non-moving party's] case to permit reasonable people to draw different conclusions" is insufficient to raise a genuine issue of material fact. *State Farm Fire & Cas. v. Aquila, Inc.,* 718 N.W.2d 879, 886–87 (Minn.2006). Bearing these standards in mind, we review the evidence de novo in a light most favorable to the non-moving party, and we resolve "[a]ll doubts and factual inferences ... in favor of the non-moving party." *Ingram v. Syverson,* 674 N.W.2d 233, 235 (Minn.App. 2004).

■ Summary judgment dismissing a negligence action is appropriate when the record lacks evidence of a duty of care, a breach of that duty, an injury, or proximate causation. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995). Whether a duty of care exists is ordinarily an issue that the court determines as a matter of law. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985).

■ Generally, a person has no duty to protect another from a third party's criminal acts. *Delgado v. Lohmar,* 289 N.W.2d 479, 483 (Minn.1979); Restatement (Second) of Torts §§ 314, 315 (1965). A duty to protect arises, however, when the plaintiff has a special relationship to the defendant and the harm is reasonably foreseeable. *H.B. ex. rel. Clark v. Whittemore,* 552 N.W.2d 705, 707 (Minn.1996); *Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165, 168 (Minn.1989). The existence of a special relationship is a threshold question.

*Errico v. Southland Corp.,* 509 N.W.2d 585, 587 (Minn.App.1993), *review denied* (Minn. Dec. 14, 1993).

## A. Special Relationship

■ Bjerke argues that she had a special relationship with Johnson under Restatement (Second) of Torts §§ 314A and 324A (b) (1965). We conclude that a special relationship existed under section 324A but not under section 314A.

■ A special relationship exists under section 314A when a person voluntarily takes "custody of another person under circumstances in which that other person is deprived of normal opportunities for self-protection." *Harper v. Herman,* 499 N.W.2d 472, 474 (Minn.1993) (citing Restatement (Second) of Torts § 314A). The plaintiff in a section 314A relationship is "typically in some respect particularly vulnerable and dependent upon the defendant who, correspondingly, holds considerable power over the plaintiff's welfare." *Id.* at 474 n. 2 quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 56, at 374 (5th ed.1984).

Johnson voluntarily took custody of Bjerke for purposes of section 314A. Bjerke's parents placed her in Johnson's care, and Johnson admits that she agreed to provide Bjerke with room and board and to protect her from injury. But the custodial arrangement did not deprive Bjerke of normal opportunities for self-protection. The self-protection element of the rule is directed toward individuals who are in some way unable to summon help by virtue of the custody arrangement. *See* Restatement (Second) of Torts § 314A illus. 6–7 (describing duty owed by jailors and teachers to inmates and small children, respectively). Bjerke, who was a teenager when the harm occurred, was not unable to summon help by virtue of the

custody arrangement. Unlike a prisoner or a small child, Bjerke had the same opportunities for self-protection under Johnson's custody as she did under her parents' custody. She could just as easily have reported the abuse under Johnson's custody, for example, as she could have done under her parents' custody. A special relationship therefore did not exist under section 314A.

■ Section 324A imposes liability when a defendant undertakes for another, gratuitously or for consideration, to perform a duty owed by the other to a third person. *Erickson,* 447 N.W.2d at 170 (adopting section 324A). The extent of the duty owed under section 324A is defined by the extent of the undertaking. *See id.* (concluding that because security firm undertook to patrol entire ramp, the firm had a duty to all patrons); *McGee v. Chalfant,* 248 Kan. 434, 806 P.2d 980, 985 (1991) (finding that friends who gave intoxicated motorist a ride to place where he left his automobile did not undertake to protect his safety or the safety of others).

When Bjerke's parents entrusted her to Johnson, Johnson agreed to shelter and feed Bjerke and to protect her from the unreasonable risk of harm. By accepting the entrustment Johnson thus undertook to perform duties Bjerke's parents otherwise owed Bjerke. *See Erickson,* 447 N.W.2d at 170 (holding that security firm hired by parking-ramp owner had duty to protect not only owner's patrons but also patrons of company that leased part of ramp). Johnson thereby entered into a special relationship with Bjerke under section 324A.

**B. *Foreseeability***

■ The scope of the duty to protect that a special relationship imposes is delineated by the harm that is foreseeable under the circumstances. *Lundgren v.* *Fultz,* 354 N.W.2d 25, 28 (Minn.1984) ("The risk reasonably to be perceived defines the duty to be obeyed."). When considering whether a risk is foreseeable, "courts look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Whiteford v. Yamaha Motor Corp.,* 582 N.W.2d 916, 918 (Minn.1998). Speculative risks are insufficient to create a duty of care. *Larson,* 373 N.W.2d at 288.

■ A criminal act by a third party is foreseeable only when a reasonably prudent person could have anticipated that the act was likely to occur. *K.L. v. Riverside Med. Ctr.,* 524 N.W.2d 300, 302 (Minn. App.1994), *review denied* (Minn. Feb. 3, 1995). The foreseeability of a sexual assault often hinges on whether the defendant was aware of prior similar behavior by the third party. *Id.* Indeed, "sexual assault . . . will rarely be deemed foreseeable in the absence of prior similar incidents." *Id.* (affirming directed verdict in hospital's favor on claim that it negligently failed to protect patient from sexual assault, reasoning that record contained no evidence that hospital knew assailant had been behaving suspiciously in recent days or had behaved suspiciously in the past); *Doe v. Goff,* 306 Ill.App.3d 1131, 240 Ill. Dec. 190, 716 N.E.2d 323, 326 (1999) (holding that Boy Scouts of America (BSA) could not have foreseen risk that boy scout would be molested by volunteer at camping trip when, at time of molestation, BSA "had no reason to believe that [the volunteer], or anyone at the camp, was predisposed to commit sexual abuse. [The volunteer] was a pediatrician who had no criminal record and no known propensity to be a child molester. Further, there was no evidence to suggest that anyone at the camp [had] committed abuse in the past, had any type of criminal record, or was

predisposed to commit abuse."); *cf. Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 290 (Tex.1996) (holding that sexual abuse of boy scout by scoutmaster was foreseeable because regional council had recommended scoutmaster despite complaints that scoutmaster was "messing with" some boy scouts and concerns that the complaints might be serious). Courts may decide the foreseeability issue as a matter of law when the issue is clear, but close foreseeability questions are for the jury. *K.L.*, 524 N.W.2d at 302.

The record contains no evidence that Bohlman had a criminal record or that he had been involved in previous incidents of sexual abuse of which Johnson was aware. Bjerke argues, nonetheless, that Johnson should have anticipated the risk of sexual abuse based on four separate incidents.

The first incident occurred during the summer of 1997, when Bjerke was 14 years old. Johnson saw Bjerke running her fingers through Bohlman's hair while they sat on a couch. Johnson admits that the conduct "didn't look right" to her and caused her to keep her "eyes open." She confronted Bohlman and asked him to talk to Bjerke about the inappropriateness of her behavior.

The second incident occurred approximately two years later, when a social worker who was a friend of Johnson's told Johnson that Bjerke exhibited "clingy" behavior around Bohlman and seemed infatuated with him. But the social worker did not express concern that Bjerke was in danger of abuse. *See* Minn.Stat. § 626.556, subd. 3 (2006) (requiring certain professionals, including social workers, to report known or suspected incidents of child abuse). The third incident took place in 2000, when Johnson saw Bjerke jump on Bohlman's lap during a horse show at Island Farm.

But absent a criminal record, or a known propensity to molest children, we conclude that these incidents [1] would not have caused a reasonable person to conclude that Bohlman was likely to molest Bjerke, particularly when Bjerke initiated the contact and Johnson was under the impression that Bohlman had been impotent since 1995. Instead, a reasonable person could have concluded on this evidence that Bjerke's behavior was indicative of a "school-girl-like crush."

The final incident, however, which occurred in January 2001, when Bjerke was 17, is sufficient to raise a genuine issue of material fact as to whether the risk of sexual abuse was reasonably foreseeable. Although Johnson denies it, there is evidence in the record that in January 2001 Johnson told a neighbor that she had to leave the house because Bohlman and Bjerke "were fooling around on the couch, and it was more than what a father-daughter should be doing and it made her uncomfortable, it was too sexual and she left."

The record does not indicate what specific conduct constituted "fooling around," but the conduct Johnson observed was sexual and sufficiently inappropriate to make her uncomfortable and cause her to leave her own house. And when Bjerke's fa-

---

**1.** Although a woman who lived at Island Farm for 11 consecutive months in 1987–88 testified that Bohlman sexually abused her, there is no evidence that Johnson was ever made aware of the alleged abuse. The woman, who was 14 at the time, stated that the abuse took place in the room Johnson and Bohlman shared, that she kept letters in which she detailed the incidents of abuse, and that she believed that the letters, which she kept on a table by her bed, had been read. But the record contains no evidence that Johnson read the letters, that the young woman ever discussed the incidents of abuse with Johnson, or that Johnson otherwise became aware of the abuse.

ther's found some of Bjerke's personal belongings, including a pair of underwear, in Bohlman's bedroom, he confronted Johnson. Johnson did not respond. On this record, a jury could reasonably conclude that Bjerke and Bohlman were sharing a room and that Johnson knew or should have known about it. *See Sylvester v. Northwestern Hosp. of Minneapolis*, 236 Minn. 384, 53 N.W.2d 17 (1952) (stating that knowledge that patient had habit of wandering on hospital grounds while intoxicated sufficient to find hospital liable for assault of another patient, in light of "experience of mankind" that intoxication causes people to become a hazard to others).

Viewing the evidence in the light most favorable to Bjerke, we conclude that Bjerke submitted sufficient evidence to raise a genuine issue of material fact as to whether the risk of abuse was reasonably foreseeable. The totality of the circumstances in this case (including the conduct Johnson observed, the discovery of Bjerke's personal belongings in Bohlman's room, Bjerke's effort to conceal the relationship, Johnson's understanding that Bohlman was impotent, and the lack of a known history of similar incidents of abuse) would permit reasonable people to draw different conclusions about the foreseeability of the harm. Because there are viable arguments on both sides regarding whether the risk of sexual abuse was foreseeable, the foreseeability issue is not susceptible to resolution as a matter of law and must be submitted to the jury. *See Laska v. Anoka County*, 696 N.W.2d 133, 140 (Minn.App.2005), *review denied* (Minn. Aug. 16, 2005) (concluding that foreseeability issue was not "so clear as to be susceptible to resolution as a matter of law" where both parties presented "opposing and meritorious arguments concerning whether a foreseeable risk to [an infant who died while napping on an adult bed] was objectively reasonable").

Accordingly, we reverse the district court's grant of summary judgment dismissing Bjerke's negligence claim and remand.

## II.

Bjerke next argues that the district court erred by concluding that her negligence claim against Johnson was barred as a matter of law because she assumed the risk of her injuries.

 Unless the evidence is conclusive, whether a person assumed the risk of injury is a question for the jury. *Schneider v. Erickson*, 654 N.W.2d 144, 148 (Minn. App.2002). Minnesota law recognizes two forms of assumption of risk. *Id.* at 148. Primary assumption of risk applies when a plaintiff "voluntarily enters into a relationship in which the plaintiff assumes well-known, incidental risks." *Id.* By voluntarily entering into the relationship, the plaintiff in effect "consents to look out for himself and [to] relieve the defendant of his duty [to protect him from the assumed risks]." *Id.* The doctrine of primary assumption of risk is an absolute bar to recovery. *Id.*

 Secondary assumption of risk, by contrast, is a form of contributory negligence that applies when a plaintiff "voluntarily encounters a known, appreciated risk without an attendant manifestation ... that he consents to relieve the defendant of his duty." *Armstrong v. Mailand*, 284 N.W.2d 343, 351 (Minn.1979). Unlike primary assumption of risk, secondary assumption of risk is not an absolute bar to recovery; instead, "like any other form of contributory negligence, [secondary] assumption of risk must be apportioned under [the] comparative negligence statute."

*Springrose v. Willmore,* 292 Minn. 23, 24–25, 192 N.W.2d 826, 827 (1971).

■■■ The essential elements of primary and secondary assumption of risk are the same—the plaintiff must have knowledge of the risk, must appreciate the risk, and must choose to take the risk despite having the opportunity to avoid it. *Schneider,* 654 N.W.2d at 149. The distinguishing element between primary and secondary assumption of risk is the plaintiff's manifestation of consent to relieve the defendant of a duty he might otherwise have. *Iepson v. Noren,* 308 N.W.2d 812, 815 (Minn.1981); *Armstrong,* 284 N.W.2d at 351.

■■■ Generally, a victim's consent to criminal conduct bars recovery in a tort action based on such conduct. *See* Restatement (Second) of Torts § 892A(1) (1965) (providing that "[o]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it"). When the legislature criminalizes conduct to protect a certain class of persons, however, and the purpose of the legislation is to protect those persons against the conduct irrespective of their consent, consent to the conduct by a member of the protected class will not bar recovery in tort. Restatement (Second) of Torts § 892C(2) (1965). The required legislative purpose to protect a particular person despite his or her consent "will ordinarily be found when it is apparent that the statute is intended for the protection of a class of persons who, by reason of their immaturity, inexperience or lack of judgment, are unable to protect themselves against the conduct to which they are likely to consent." *Id.* cmt. e.

In criminal cases, consent is not a defense to a charge of sexual abuse of a child under the age of 16—a crime often referred to as statutory rape. *See, e.g.,* Minn.Stat. § 609.342, subd. 1(b) (2006) (providing that consent is not defense to charge of first-degree criminal sexual conduct when victim is between ages of 13 and 16 and perpetrator is at least 48 months older than victim). The preclusion of consent as a defense to statutory rape "reflects the feeling of society in general that sexual contact by adults with children under 16 is reprehensible whether or not the child consents, because at that age, *the child should be deemed incapable of consenting.*" *State v. Steinbrink,* 297 N.W.2d 291, 293 (Minn.1980) (emphasis added). Whether for civil-liability purposes a child under the age of consent should also be deemed legally incapable of consenting to statutory rape is a question of first impression in Minnesota.

A majority of jurisdictions adopt the Restatement's position and exclude consent as a defense in civil actions arising out of statutory rape. *See, e.g., Christensen v. Royal Sch. Dist. No. 160,* 156 Wash.2d 62, 124 P.3d 283, 286 (2005) (concluding that "notion that minors are incapable of meaningful consent in a criminal law context should apply in the civil arena and command a consistent result"); *Wilson v. Tobiassen,* 97 Or.App. 527, 777 P.2d 1379 (1989) (concluding that incapacity of minor to consent to sexual acts in criminal cases extends to civil cases). These jurisdictions have reasoned that the enactment of statutes criminalizing sexual activity with minors evidences the legislature's intent to protect minors from sexual exploitation and that allowing civil defenses premised on a minor's consent would be inconsistent with such intent. *See, e.g., Christensen,* 124 P.3d at 286 (noting that "[t]he obvious purpose of [ ] statutes [criminalizing sexual activity with a minor] is to protect persons who, by virtue of their youth, are too immature to rationally or legally consent"); *Doe by Doe v. Greenville Hosp. Sys.,* 323

S.C. 33, 448 S.E.2d 564, 566 (1994) (concluding that general assembly's determination that children under age of consent are incapable of consenting to sexual battery extends to civil context).

A minority of jurisdictions, on the other hand, allow consent as a defense in civil actions arising out of statutory rape. *See, e.g., Tate v. Bd. of Educ. of Prince George's County,* 155 Md.App. 536, 843 A.2d 890, 901 (2004) (concluding that "a minor's consent is relevant for purposes of determining civil liability"); *Michelle T. by Sumpter v. Crozier,* 173 Wis.2d 681, 495 N.W.2d 327, 329 (1993) (holding that evidence of victim's consent to inappropriate touching defeated civil-battery charge). These jurisdictions based their determination on principles of fairness, the belief that minors acquire the capacity to consent to different types of conduct at different stages in their development, the broad range of situations in which minors are deemed to be legally capable of consenting, and the difference in purpose between the civil- and criminal-justice systems. *See, e.g., Doe by Roe v. Orangeburg County Sch. Dist. No. 2,* 335 S.C. 556, 518 S.E.2d 259, 261 (1999) (stating that "[i]t is antithetical to principles of fair trial that one party may seek recovery from another based on evidence it selects while precluding opposing relevant evidence on grounds of prejudice" in allowing defendant to raise plaintiff's consent at damages phase (quotation omitted)); *Tate,* 843 A.2d at 899 (noting that "[t]here is no hard-and-fast rule as to the age at which a person attains the capacity to consent to bodily invasions" (quotation omitted)); *McNamee v. A.J.W.,* 238 Ga.App. 534, 519 S.E.2d 298, 302 (1999) (noting that "decisional and statutory law is replete with examples of situations in which a child over the age of 14 is deemed to have the mental capacity of an adult"); *Cynthia M. v. Rodney E.,* 228 Cal.App.3d 1040, 279 Cal.Rptr. 94, 98 (1991) (stating that "to recognize the asserted right to recover would be to permit plaintiff to profit by the wrong to which she voluntarily was a party" (quotation omitted)).

Minnesota has unambiguously declared its strong interest in preventing the sexual abuse of children. *See* Minn.Stat. § 626.556, subd. 1 (2006) (declaring policy to protect children whose welfare may be jeopardized by sexual abuse). To that end, the legislature has enacted several statutes criminalizing sexual conduct with children under the age of consent irrespective of consent. *See* Minn.Stat. §§ 609.342–609.345 (2006). Specifically, for children under the age of 16, consent is not available as a defense; and for children at least 16, but less than 18 years of age, consent is also not a defense, subject to certain enumerated statutory exceptions. Thus, the legislature has determined, as a matter of public policy, that consent is not available as a defense in cases involving children under the age of 16 who are abused by a person at least 48 months older and children between the ages of 16 and 18 who are abused by a person in a position of authority or a person with whom they have a significant relationship.

The statutes are based on society's notion that a child under the age of consent lacks the judgment, maturity, and sophistication necessary to freely agree to engage in sexual conduct with an adult. *See* Minn. Stat. § 609.341, subd. 4 (2006) (defining consent as "words or overt actions by a person indicating a *freely given present agreement* to perform a particular sexual act" (emphasis added)); *Steinbrink,* 297 N.W.2d at 293; *see also State v. Krotzer,* 548 N.W.2d 252, 256 (Minn.1996) (Coyne, J., dissenting) (stating that statutory rape "is based on recognition of the fact that young girls and boys lack both judgment

and the understanding of the possible long-term consequences of their actions so that they are incapable of giving meaningful consent to sexual intercourse," while disagreeing with majority on other grounds), *abrogated by State v. Lee*, 706 N.W.2d 491 (Minn.2005).

In a case that is instructive even though not entirely parallel, this court concluded that the doctrine of absolute liability precludes affirmative defenses when the legislature enacts a statute "to protect a limited class of persons from their own inexperience, lack of judgment, or inability to protect themselves or to resist pressure, or tendency toward negligence." *Thelen v. St. Cloud Hosp.*, 379 N.W.2d 189, 193 (Minn.App.1985) (quotation omitted). The *Thelen* court construed the Minnesota Vulnerable Adult Act as precluding the defenses of assumption of risk and contributory negligence in an action for damages resulting from failure to report the abuse of a vulnerable adult. *Id.* The court noted that because of their disabilities, vulnerable adults were more likely to engage in behavior that would be regarded as contributory negligence or assumption of risk if engaged in by a non-vulnerable adult. Accordingly, if that behavior were allowed as a defense in cases arising under the act, "the civil liability imposed [by the Act] would be a nullity." *Id.* at 194 (quotation omitted).

■ Here, too, the clear intent of the legislature in enacting statutes criminalizing sexual conduct with children under the age of 16, irrespective of consent, and with children between the ages of 16 and 18 who are abused by a person in a position of authority or a person with whom they have a significant relationship, was to protect children from being sexually exploited as a result of their inexperience, lack of judgment, inherent curiosity about sex, and inability to resist pressure or protect themselves. As a result of their youth and inexperience, minors are more likely to engage in sexual conduct that would be construed as assumption of risk or contributory negligence if engaged in by an adult. Thus, to allow assumption of risk as a defense in a civil action would not only be inconsistent with the legislature's commitment to the protection of children from sexual exploitation but would also render civil liability a nullity, particularly in cases involving teenagers.

■ We observe that at the time of the fourth incident, involving Bohlman and Bjerke "fooling around on the couch," Bjerke was 17 years old and, therefore, the categorical ban against consent as a defense to statutory rape does not apply. *See* Minn.Stat. § 609.342. But under the criminal statute, consent is unavailable as a defense when the perpetrator is in a position of authority over the complainant or has a significant relationship with her. Here, the parties have not raised the issue of whether Bohlman was in a position of authority over Bjerke or had a significant relationship with her. Thus, we conclude that assumption of risk may be available as a defense to claims arising from conduct that occurred after Bjerke turned 16, but before she turned 18, if the factfinder determines that Bohlman was not in a position of authority or had a significant relationship with Bjerke. On this record, we are unable to conclude as a matter of law that assumption of risk is not available as to the fourth incident.

■ For the same reasons, we conclude that secondary assumption of risk is not a defense in cases involving children under the age of 16, and has limited availability for children who are at least 16, but not yet 18, at the time of the sexual conduct. We are persuaded that, as a matter of public policy, a person under the age of consent lacks the judgment and maturity

necessary to fully appreciate the danger inherent in engaging in sexual relations with an older person.

We thus see no reason not to apply the criminal-law presumption that minors are legally incapable of consenting to sexual conduct to civil cases. Accordingly, we conclude that the doctrines of primary and secondary assumption of risk, which are premised on the victim's consent or appreciation of the risk of harm, do not preclude recovery in actions arising from sexual conduct.

### III.

■■■ Bjerke also challenges the district court's order granting Johnson's request for a bifurcated trial of the claims against her and Bohlman and denying Bjerke's request to amend her complaint to add a punitive-damages claim against Johnson. Although these are not independently appealable orders, we choose to address them in the interest of justice. Minn. R. Civ.App. P. 103.04.

■■■ A district court has wide discretion to grant separate trials, and its decision will not be overturned absent a clear abuse of that discretion. *McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605, 614 (Minn.1984). A motion for a bifurcated trial is appropriate when it furthers convenience or avoids prejudice. Minn. R. Civ. P. 42.02. Bjerke argues that the district court abused its discretion because the interrelatedness of the issues makes two trials inconvenient, and bifurcation does not avoid prejudice because the evidence of Bohlman's abusive conduct will undoubtedly be heard in the damages phase of Johnson's trial. The district court found that the issues were not interrelated because the claims against Johnson are for negligence, and those against Bohlman are for intentional torts. Also, the district court believed that a combined trial could expose Johnson to "undue prejudicial effect." We decline to say that these findings are improper.

■■■ As with a motion to bifurcate trials, we review an order denying a motion to amend a complaint for abuse of discretion. *Baertsch v. Minn. Dep't of Revenue*, 518 N.W.2d 21, 26 (Minn.1994). When making a motion to add a claim for punitive damages, the moving party must present prima facie evidence that clearly and convincingly shows the defendant's "deliberate disregard" for the safety of others. Minn.Stat. §§ 549.191, 549.20 (2006); *McKenzie v. N. States Power Co.*, 440 N.W.2d 183, 184 (Minn.App.1989). The district court denied Bjerke's motion to add a claim for punitive damages against Johnson because Bjerke's supporting affidavits did not make the requisite prima facie showing. Our review of these affidavits leads us to conclude that there is evidence of negligence sufficient for consideration by a jury, but not of deliberate disregard by Johnson. A showing of negligence is insufficient to support a claim for punitive damages, thus the district court did not abuse its discretion. *See McKenzie*, 440 N.W.2d at 184 (rejecting evidence of negligence as evidence of willful indifference).

### DECISION

Because Bjerke and Johnson had a special relationship under Restatement (Second) of Torts § 324A (1965) and genuine issues of material fact remain as to whether Bohlman's sexual abuse of Bjerke was foreseeable, the district court erred by granting summary judgment to dismiss Bjerke's negligence claim against Johnson. Because for criminal-liability purposes a person under the age of consent lacks the capacity to consent to underage sexual contact, assumption of risk is not an available defense in a civil action for damages

arising out of such contact. Children under the age of 16 who are abused by a person 48 months older and children between the ages of 16 and 18 who are abused by a person in a position of authority are deemed to be under the age of consent. The district court did not abuse its discretion by granting Johnson's motion for a bifurcated trial and denying Bjerke's motion to amend her complaint to add a punitive-damages claim.

**Affirmed in part, reversed in part, and remanded.**

LANSING, Judge (concurring specially).

On the facts presented in this appeal, Aja Bjerke has established that she had a special relationship with Suzette Johnson when she went to live on Johnson's farm in 1998 when she was 15 years old. On the basis of that special relationship, together with the facts supporting foreseeability, Bjerke has established a triable issue on whether Johnson had a duty to protect Bjerke from sexual abuse by Johnson's boyfriend, Kenneth Bohlman, which Bjerke alleges occurred between 1998 and 2001.

Bjerke has also demonstrated that the district court erred by concluding as a matter of law that Bjerke assumed the risk of the injuries she sustained as a result of the sexual abuse. Minnesota's statutory rape laws are based on the firmly established principle that a child who is under the age of 16 is incapable of consenting to sexual contact with adults. *State v. Steinbrink,* 297 N.W.2d 291, 293 (Minn. 1980). Criminal statutes further establish that children between the ages of 16 and 18 are deemed incapable of consenting to sexual contact with adults if that adult has a significant relationship with or is in a position of authority over the child. Minn. Stat. § 609.344, subd. 1(e)-(f) (2006). The public policy underlying these principles

recognizes that children in their mid-teens are susceptible to sexual exploitation because of their inexperience and lack of judgment, which makes them unable to resist external pressures, especially when the pressure is exerted by adults they know and trust, or to whom they are subordinate. *See State v. Krotzer,* 548 N.W.2d 252, 256 (Minn.1996) (Coyne, J., dissenting) (noting minors' inability to appreciate potential long-term consequences of sexual conduct), *abrogated by State v. Lee,* 706 N.W.2d 491 (Minn.2005). Thus a defendant in a civil action should not be permitted to raise assumed risk as a defense against a child under the age of 16, and should only be permitted to raise the defense against a child between the ages of 16 and 18 if the defendant was not in a position of authority over the child and did not have a significant relationship with the child.

The majority attaches significance to the fact that Bjerke was 17 years old at the time of the fourth incident and hinges the availability of the assumed-risk defense on whether Bohlman was in a position of authority at the time. That analysis is incomplete because it does not take into account the facts that establish that Bohlman had a significant relationship with Bjerke. *See* Minn.Stat. § 609.341, subd. 15(3) (2006) (stating significant relationship includes adult who resides intermittently or regularly in same dwelling as complainant); *State v. Sebasky,* 547 N.W.2d 93, 100 (Minn.App.1996) (finding significant relationship when complainants stayed at defendant's apartment for periods of two to six days), *review denied* (Minn. June 19, 1996). On these facts, the assumption-of-risk defense is unavailable to Johnson.

For these reasons I would reverse the district court's summary judgment dismissing Bjerke's negligence claim. Be-

cause the district court acted within its discretion in bifurcating for trial the claims against Bohlman and Johnson, I would affirm that ruling. I would also affirm the ruling on the punitive-damages motion based on the current record.