KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 64. Because I would reverse the judgment and remand the case for a new trial, I respectfully concur in part and dissent in part.

Facts

¶ 65. The majority omits several relevant facts and only partially recites others. L.R. testified that, when she was eleven years old, she was forcibly raped numerous times by a thirty-six-year-old man. Although the rapist claimed that the sex was consensual, an eleven-year-old child simply cannot consent to having sexual intercourse. According to L.R., each of the rapes took place in the common areas of her father’s apartment complex.
¶ 66. Federation Tower was a three-story apartment complex which housed the elderly and disabled. The doors to all of the apartments faced inward into closed hallways, and the only access to the building was through two doors, which opened into the lobby, and side fire doors, which were designed to remain locked. Shortly before the rapes occurred, management at Federation Tower sent a memorandum to the residents, warning them that some residents were leaving the fire doors open, allowing trespassers to enter the building. The plaintiffs’ position was that the perpe *370 trator had gained access to the building through these doors that were left open by-other residents.
¶ 67. During the father’s deposition, which was read to the jury because he had died, he testified that he had notified Federation Tower’s management that Kelly had been trespassing on the property, and “[t]hey said they would take care of it.” L.R.’s father further testified that Gladys Miller, the head manager, never spoke to him about his daughter’s being unsupervised and that Miller would often watch over L.R. and other children who played in the common areas.
¶ 68. Kelly’s deposition also was read to the jury. According to Kelly, no one asked him to leave the property. Instead, Kelly testified that one of the managers, James Gray, warned him that someone had been breaking into cars on the property and Gray did not want Kelly to be blamed. Gray denied that he had ever spoken to Kelly.
¶ 69. Regarding L.R.’s assistance to Miller, according to L.R., Miller would ask her to tape notices on the apartment doors, and would send her throughout the building unsupervised. Miller was never asked whether she sent L.R. into the hallways alone, but Miller did testify that she had problems with L.R.’s roaming around the building unsupervised. Miller said that she told L.R.’s father to keep her in the apartment, although L.R.’s father denied that any such conversations had taken place.
¶ 70. Although when first questioned, Gladys Miller denied knowing about the sexual assaults, she later testified that she had heard about the sexual assaults from another resident “when it happened.” Miller testified that she also told L.R.’s father but took no further action. Thus, the defendants clearly were on notice that L.R. was being sexually assaulted in the stairway.
¶ 71. As for her damages, Dr. Hiatt testified that, although she had been fondled, once at age five and once at age eight, L.R. did not seem to be greatly affected by those two incidents. Thus, Dr. Hiatt did not attribute her mental and emotional problems to the prior incidents. Dr. Hiatt testified that L.R. was an outgoing and happy child until she was raped by Kelly. After the rapes, L.R. was unable to leave the house without her mother, and at one point she weighed three hundred pounds. L.R. tried to attend a community college, but was forced to drop out and take online courses because she could not handle the anxiety of being around strangers. The majority opinion fails to mention that L.R. dropped out of school or Dr. Hiatt’s testimony that he had recommended that L.R. be treated, but her mother had said they simply did not have the money.
¶ 72. Most notably, L.R. had never claimed her daughter, A.B., as her own, because she was too ashamed of being raped and giving birth at twelve years old. At the time of trial, A.B. was eight years old and believed that she was her grandmother’s daughter and that L.R. was her sister. L.R. refused publicly to acknowledge A.B. as her daughter, and L.R.’s mother had taken on the responsibility of rearing A.B.
¶ 73. As for her postings on social-networking websites, L.R. testified that had she created these web pages as part of a school project. The defendants tried to use these pages to demonstrate that, contrary to Dr. Hiatt’s and L.R.’s testimony, she did have friends and was well-adjusted. However, L.R. had one “friend” on her MySpace page, a man named Tom, who is automatically “friends” with every *371 one who has a MySpace account.[7] L.R. had eleven “friends” on her Facebook page, most of whom were her classmates.
¶ 74. Finally, L.R. had one unsuccessful sexual encounter after the rape. When L.R. was seventeen, she attempted to have a sexual relationship with another teenager, but was unable to continue because the experience brought back the memories of her rape. According to L.R., she became physically ill the one time she tried to have sex, and there was no evidence to suggest that she was otherwise sexually active.

Evidence of “Consent”

¶ 75. I disagree with the majority opinion’s recognizing that an eleven-year-old child has the capacity to consent to sexual intercourse, as such a recognition is at odds with the established public policy of this state that children of L.R.’s age cannot consent to sexual intercourse. See Miss.Code Ann. § 97-3-65 (Rev.2006) (defining statutory rape). When a child is under the age of consent, “[i]t is immaterial whether the rape was accomplished by force or violence or against the will of the child.” Brooks v. State, 242 So.2d 865, 867 (Miss.1971). “At the heart of these [statutory rape] statutes is the core concern that children should not be exploited for sexual purposes regardless of their ‘consent.’ They simply cannot appreciate the significance or the consequences of their actions.” Collins v. State, 691 So.2d 918, 924 (Miss.1997). Although I agree that Federation properly was allowed to adduce evidence that L.R. had allowed Kelly entry to the building, as this was relevant to causation, evidence of her “subjective consent” to sexual intercourse was not relevant and was far too prejudicial to have been admissible. M.R.E. 402, 403. The majority refuses to “adopt a blanket rule allowing such evidence in all civil trials,” but surely the facts of the present case would favor exclusion: the defendants knew that an eleven-year-old child was being sexually assaulted by a thirty-six-year-old man on property that was under their control and was home to many vulnerable adults, whose safety depended, in large part, on the defendants providing them and their families a safe environment.
¶ 76. The defendants argue that consent is relevant to causation because “if [L.R.] and Kelly were actively concealing their relationship, then Defendants had no reason to know about it, and thus, could not be held liable.... ” Yet, this argument fails because it is undisputed that both managers, Miller and Gray, knew that L.R. was being sexually assaulted in the stairwell. Because their knowledge is imputed to their employers, the defendants, as a matter of law, knew about the assaults. Glover v. Jackson State Univ., 968 So.2d 1267, 1276 n. 9 (Miss.2007) (plurality opinion).
¶ 77. The defendants also argue, with apparent agreement from the majority, that, had L.R. been forcibly raped, her damages would be greater. As Dr. Hiatt testified, an eleven-year-old does not have the capacity to understand sex, and the psychological and emotional damages to an eleven-year-old who thought she was consenting would be not be lessened. Even were we to accept that L.R.’s damages would be greater had she been forcibly raped, the difference would be too minimal to outweigh the prejudice of arguing that an eleven-year-old may consent to sexual activity with another. M.R.E. 403.
¶ 78. The majority opinion cites Stavroula S. v. Guerriera, 193 A.D.2d 796, 797, *372 598 N.Y.S.2d BOO (1993), which involved a civil action for battery brought against the rapist. That Court held that consent could be litigated because “the issue of whether he touched the plaintiff without her consent ... is the gravamen of the tort of battery.” Id. The present case involves a negligence, premises-liability claim, against a third party to the rape, and consent is not an element of or a defense to this tort.
¶ 79. Furthermore, the Tennessee case relied on by the majority applied the “mature minor” rule or the “Rule of Sevens,” meaning “under the age of seven, no capacity; between seven and fourteen, a rebuttable presumption of no capacity; between fourteen and twenty-one, a re-buttable presumption of capacity.” Doe v. Mama Taori’s Premium Pizza, LLC, 2001 WL 327906, at *5 (Tenn.Ct.App. Apr. 5, 2001) (quoting Cardwell v. Bechtol, 724 S.W.2d 739, 745 (Tenn.1987)). If we were to apply Tennessee’s “mature minor” rule to the present case, there would be a rebuttable presumption that L.R. was incapable of consenting to sexual contact.
¶80. Bjerke v. Johnson, 727 N.W.2d 183 (Minn.Ct.App.2007), cited by the majority opinion, recognized that “[a] majority of jurisdictions adopt the Restatement’s position and exclude consent as a defense in civil actions arising out of statutory rape.” Id. at 193 (citing Christensen v. Royal Sch. Dist. No. 160, 156 Wash.2d 62, 124 P.3d 283, 286 (2005); Wilson v. Tobiassen, 97 Or.App. 527, 777 P.2d 1379 (1989)). According to the Bjerke court, “[tjhese jurisdictions have reasoned that the enactment of statutes criminalizing sexual activity with minors evidences the legislature’s intent to protect minors from sexual exploitation and that allowing civil defenses premised on a minor’s consent would be inconsistent with such intent.” Id. at 193-94 (citing Christensen, 124 P.3d at 286; Doe v. Greenville Hosp. Sys., 323 S.C. 33, 448 S.E.2d 564, 566 (1994)). Certainly, these same considerations should govern in Mississippi and extend to the issue of damages.
¶ 81. Under Mississippi law, an eleven-year-old child does not have the capacity legally to consent to sexual intercourse. See Phillipson v. State, 943 So.2d 670, 672 (Miss.2006); Miss.Code Ann. § 97-3-65 (Rev.2006). And the limitations on capacity are not limited to sexual intercourse or to the context of criminal cases. For example, she may not bring a lawsuit on her behalf. See Lawler v. Gov’t Employees Ins. Co., 569 So.2d 1151, 1153 (Miss.1990); Miss.Code Ann. § 15-1-59 (Rev.2003). She is not capable of being held criminally liable. Miss.Code Ann. § 43-21-151(3) (Rev.2009). In the case of a custody dispute, a chancellor cannot consider an eleven-year-old’s preference as to the parent with whom she wishes to live. Miss.Code Ann. § 93 — 11—65(l)(a) (Rev.2004). She would not be considered a competent juror. Miss.Code Ann. § 13-5-1 (Rev.2002). She cannot enter into a valid contract. See Johnson Motors, Inc. v. Coleman, 232 So.2d 716, 720 (Miss.1970); Miss.Code. Ann. § 15-3-11 (Rev.2003). She cannot obtain an abortion absent parental consent or a court order. Miss.Code Ann. § 41-41-53 (Rev.2009). A minor’s capacity is legally limited in both civil and criminal contexts, and contrary to the majority’s holding otherwise, this case provides no exception.
¶ 82. I respectfully disagree with the majority’s blanket holding that “[d]eter-rence and punishment for criminal conduct are within the general province of our criminal law,” and that “[t]he public’s interests are sufficiently protected by imposition of criminal sanctions.” It cannot be denied that civil actions also can have deterrent effects and sometimes punish the *373 wrongdoer, for example, in the case of punitive damages. Criminal conduct often has economic consequences, and our legal system allows victims to recover for their injuries. In this case, L.R. has suffered extensive damages that cannot be fully redressed by a criminal conviction and punishment of her attacker.
¶ 8B. For the foregoing reasons, the trial court erred in allowing evidence of L.R.’s “consent” to be one of the focal points of this litigation, and based on this error, I would reverse the case and remand for a new trial.

Prior Sexual Molestation

¶ 84. I agree that this issue is proee-durally barred, because the plaintiffs fail to argue that the prior incidents may have contributed to L.R.’s emotional and psychological damages. However, I am not prepared to say, as the majority holds, that evidence of these incidents was admissible in the same way that a prior physical injury or pre-existing condition may be used to cross-examine a plaintiff. See Boyd v. Smith, 390 So.2d 994, 998 (Miss.1980) (cited by the majority opinion).

Economic Cost of Raising a Child

¶ 85. To support its holding that the trial judge did not err by excluding evidence of the costs of raising a child, the majority relies mainly on cases involving children born subsequent to failed sterilization procedures. Maj. Op. at ¶¶ 38^1. Were this a medical negligence case, involving a child born to two consenting adults, I might agree with the majority that the costs of rearing the child cannot be recovered. However, in this case, a child herself was raped and bore a child, and this rape was enabled by the defendants. “It is axiomatic that one is liable for the full measure of the reasonably foreseeable consequences of their actions.” Allred v. Fairchild, 916 So.2d 529, 532 (Miss.2005) (citing Universal Life Ins. Co. v. Veasley, 610 So.2d 290, 295 (Miss.1992)).
¶ 86. Here, the verdict against the defendants signified the jury’s acceptance of the plaintiffs’ theory that, in effect, the rapist was enabled in his dastardly criminal enterprise by the defendants’ negligent failure to exercise reasonable precautions to secure their premises against infiltration by dangerous persons such as the assailant of this eleven-year-old child. Without question, the child was in a place where she had a lawful right to be. She and her parents were justified in relying on the defendants to deny access to intruders who might prey upon the vulnerable adults who populated the premises, as well as their children and other legitimate guests.
¶ 87. Rape and other kinds of sexual assault are all too prevalent in American society and are reasonably foreseeable when those who have a duty to provide reasonable security at residential premises under their control fail to perform such duty in a prudent manner. Unwanted pregnancy is a reasonably foreseeable consequence of sexual assault upon female victims. What happened to L.R. in these horrendous circumstances was a reasonably foreseeable consequence of the defendants’ negligent failure to provide reasonable security measures, as determined by the jury, resulting in the birth of a child whose presence in L.R.’s life was unanticipated by the hapless young mother, at a time when she was ill prepared in every respect for the responsibilities of parenthood, including the considerable financial aspect of those responsibilities.
¶ 88. It is beyond doubt that money will be needed for the rearing of the child that L.R. did not choose to bear. Upon a retrial, the jury should be tasked with determining how much likely will be required for that purpose, and apportion that component of L.R.’s damages to whomever it may deem to be the tort feasors.

*374
Conclusion

¶ 89. While I agree that the judgment should be reversed, I would remand the case for a new trial based on the trial court’s allowing evidence of “consent.” On remand, the jury should be instructed to consider the costs of rearing the child and should not be allowed to apportion fault to L.R.’s father. For these reasons, I respectfully concur in part and dissent in part.

. In the context of social-networking websites, "friend” simply means an electronic contact.