*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0865**

In the Matter of the Welfare of: J. G. G., Child.

**Filed November 23, 2015
Affirmed
Reilly, Judge**

Itasca County District Court
File No. 31-JV-14-3623

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant J.G.G.)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Muhar, Itasca County Attorney, Todd S. Webb, Assistant County Attorney, Grand Rapids, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Rodenberg, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

The district court granted respondent State of Minnesota's motion to certify appellant J.G.G. for adult prosecution on first-degree criminal sexual conduct charges. Appellant challenges the certification, arguing that the district court's finding that public safety could not be served with juvenile prosecution is clearly erroneous. We affirm.

## FACTS

Appellant J.G.G. was charged by petition on December 31, 2014, with ten counts of first-degree criminal sexual conduct, Minn. Stat. § 609.342, subd. 1(a) (2014), for engaging in sexual intercourse with, D.J.B., his girlfriend. J.G.G. and D.J.B. had sexual intercourse for the first time in July 2014. J.G.G. was 17 years old at the time and is 54 months older than D.J.B., who was 12 years old at the time. The sexual relationship continued through October 2014. D.J.B. estimated they had sexual intercourse two to three times a week between July and October when D.J.B. found out she was pregnant. Along with the delinquency petition, the state filed a motion for presumptive certification. On May 7, 2015, the district court certified J.G.G. to stand trial as an adult. It determined that all six of the public safety factors weighed in favor of certification, and that J.G.G. had failed to demonstrate by clear and convincing evidence that retaining the proceedings in juvenile court would serve public safety.

## D E C I S I O N

We review a district court's decision to certify a juvenile to stand trial as an adult under an abuse of discretion standard. *In re Welfare of J.H.*, 844 N.W.2d 28, 34 (Minn. 2014); *see In re Welfare of S.J.T.*, 736 N.W.2d 341, 346 (Minn. App. 2007) ("A district court has considerable latitude in deciding whether to certify, and this court will not upset its decision unless its findings are clearly erroneous so as to constitute an abuse of discretion." (quotation omitted)), *review denied* (Minn. Oct. 24, 2007). "We will not disturb a finding about whether public safety would be served by retaining the proceeding in juvenile court unless it is clearly erroneous." *J.H.*, 844 N.W.2d at 35. In determining

2

whether the findings are clearly erroneous, an appellate court reviews the record in the light most favorable to the juvenile court's findings. *Id.*

When a juvenile is 16 or 17 at the time of the offense, and the underlying offense would result in a presumptive commitment to prison under the Minnesota Sentencing Guidelines, it is presumed that the juvenile will be certified as an adult. Minn. Stat. § 260B.125, subd. 3 (2014). This presumption can be rebutted if the juvenile can demonstrate "by clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety." *Id.* The statute enumerates six factors for a district court to consider when determining if certifying a juvenile to stand trial as an adult serves public safety:

> (1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim;
>
> (2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines;
>
> (3) the child's prior record of delinquency;
>
> (4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;
>
> (5) the adequacy of the punishment or programming available in the juvenile justice system; and
>
> (6) the dispositional options available for the child.
>
> In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the

3

child's prior record of delinquency than to the other factors listed in this subdivision.

*Id.*, subd. 4; *see St. Louis Cnty. v. S.D.S.*, 610 N.W.2d 644, 650 (Minn. App. 2000) ("We cannot emphasize too strongly that the trial court must place greater weight on the severity of the alleged crime and the prior delinquency record of the juvenile in deciding whether to certify."). Our analysis of this case is guided by the supreme court's recent decision, *In re Welfare of J.H.* In that case, despite determining that the district court erred in its application of the fourth public safety factor, the child's programming history, and the fact that J.H. had no delinquency record the supreme court affirmed the certification of J.H.[1] 844 N.W.2d at 40. It noted:

> The juvenile court analyzed all six of the statutory public safety factors, made written findings regarding each factor even though it was not required to do so, and expressly stated that it gave greater weight to the seriousness of the offense and J.H.'s prior record of delinquency in making its decision. Because the district court's findings on four of the public safety factors, including the seriousness of the offense, are not clearly erroneous and favor certification, the juvenile court did not abuse its discretion when it certified J.H. for adult prosecution.

*Id.*

In certifying J.G.G., the district court determined that each of the six public safety factors favored certification, made written findings, and expressly stated that it gave

---

[1] This court reversed the district court's determination that J.H. should be certified. The supreme court reversed the court of appeals. *In re Welfare of J.H.*, 829 N.W.2d 607, *rev'd*, 844 N.W.2d at 40.

4

greater weight to the seriousness of the offense and the prior delinquency record.  We examine each factor in turn.

*Seriousness of the crime in terms of community protection*

The district court found that criminal sexual conduct in the first degree was a very serious crime and that the offenses were serious from a public safety standpoint because J.G.G. "committed the illegal acts on multiple occasions" and "[h]e knew what he was doing was wrong."  The district court also considered the significant impact on the victim.  D.J.B. had to deal with pregnancy at a young age and was harassed in school.  It determined that this factor weighed strongly in favor of certification. The district court did not err or abuse its discretion in making these findings.

*Culpability of the child*

In analyzing the second factor, the district court found J.G.G. was highly culpable because he was the only participant in the offense.  When the juvenile is the only participant in the offense, the culpability factor supports certification.  *S.J.T.*, 736 N.W.2d at 354.  The district court also determined that no mitigating factors were present. Although the court found that the intercourse "did not involve the use of force, violence, coercion, or intimidation," it noted that D.J.B. could not legally consent to the intercourse, and therefore, her alleged consent could not be used as a mitigating factor. *See Bjerke v. Johnson*, 727 N.W.2d 183, 194 (Minn. App. 2007) ("[T]he legislature has . . . criminaliz[ed] sexual conduct with children under the age of consent irrespective of consent") *aff'd*, 742 N.W.2d 660 (Minn. 2007).  The district court determined that this

factor favored certification. The record supports this finding. The district court did not err or abuse its discretion.

***Prior record of delinquency***

Like the seriousness of the offense factor, the child's prior record of delinquency is one of two factors that must be given more weight. Minn. Stat. § 260B.125, subd. 4. The district court found that J.G.G.'s prior delinquency record weighed in favor of certification, based on its determination that J.G.G.'s prior record consisted of five petitions involving misdemeanor level offenses.

First the district court considered two misdemeanor driving charges: careless driving and misdemeanor no insurance and vehicle registration. These offenses do not fall under the definition of prior delinquency record because he was adjudicated a "juvenile traffic offender" and the delinquency statutes exclude juvenile petty and juvenile traffic offenders. Minn. Stat. § 260B.007, subd. 6(a)(1) (2014). It was error for the district court to consider traffic offenses as a part of a juvenile delinquency record for certification purposes.

J.G.G. also was the subject of a juvenile petition in 2010 which was resolved with a continuance for dismissal. The petition was ultimately dismissed when he complied with the conditions imposed on him. J.G.G. objected to the admission of testimony related to this offense at the hearing, and argues on appeal that it should not have been considered as a part of his record. The district court concluded that under the *N.J.S.* decision, it was proper to consider this charge because it "resulted in [a] petition[] to court." *In re Welfare of N.J.S.*, 753 N.W.2d 704, 710 (Minn. 2008).

6

*N.J.S.* also informs this court's review of J.G.G.'s prior record of delinquency. Although the issue in *N.J.S.* was whether uncharged behavior may be considered when evaluating the prior record of delinquency factor, the court's analysis is instructive in this case. Like this case, in *N.J.S.* the appellant argued that "delinquency" should include only adjudicated conduct. The state argued that a "prior record of delinquency" also encompassed unadjudicated conduct. The court noted that "[t]he words 'delinquent' and 'delinquency' are consistently used in chapter 260B with reference to the violation of laws and the adjudication of petitions alleging such violations. . . . In addition, the chapter's statement of purpose links being 'delinquent' to formal allegations and adjudications." *Id.* at 709. Turning next to the definition of record, the court found that "'record' is used in the chapter [260B] to refer to information created in the juvenile court system through a petition *and* an adjudication." *Id.* at 709-10 (emphasis added).

In this case, the continuance for dismissal was the "suspen[sion of a delinquency proceeding] for a specified period without a finding that the allegations of the charging document have been proved after which [the proceeding] will be dismissed . . . on condition that the child not commit a delinquency or juvenile petty or juvenile traffic offense during the period of the continuance." Minn. R. Juv. Delinq. P. 14.01, subd. 1. The petition was ultimately dismissed without an admission of guilt and does not fall under the definition provided in Minn. Stat. § 260B.125, subd. 4(3), as further explained in *N.J.S..* 753 N.W.2d at 707-08. The district court erred by considering it.

The two remaining juvenile petitions included in the district court's analysis were misdemeanor violations of harassment restraining orders (HRO) from spring 2013.[2] One was dismissed pursuant to a plea bargain. Therefore, the sole petition the district court should have considered is the harassment restraining order violation for which J.G.G. was adjudicated delinquent. J.G.G.'s one remaining misdemeanor adjudication does not strongly favor adjudication.

*Programming History*

The district court found that J.G.G.'s "history of correctional programming in the juvenile justice system is minimal." His out-of-home placement history was limited to one day, and he was never placed in a residential treatment program. The court also acknowledged that J.G.G. had completed probation twice without being subject to a violation and had not violated any of his current release conditions.

In determining this factor weighed in favor of certification, the district court relied, in part, on J.G.G.'s school failures. J.G.G. argues that it was error for the court to consider J.G.G.'s schooling under this factor. We disagree, because the school provided J.G.G. with specialized services that were related to the "specific behavioral or social issues of [J.G.G.] relevant to juvenile delinquency." *J.H.*, 844 N.W.2d at 39. Although, "[g]enerally, a school does not fall within the broad definition of programming," *id.*, here, the district court found that the "school has provided services to address [J.G.G.'s] social and behavioral needs." Specifically, appellant received the services of a one-on-one

_____

[2] Because these petitions had been resolved and were not pending petitions, this court's analysis in *In re Welfare of R.D.M., III*, 825 N.W.2d 394, 400 (Minn. App. 2013), does not apply.

paraprofessional who attended class with him each day. The services were tailored to address his sexually acting out behaviors and conflicts with teachers and authority figures. The court noted that "[d]espite these services, [J.G.G.] has not shown meaningful changes in behavior."

Appellant also had a significant history of mental health programming through Children's Mental Health Services (CMHS) to address his troubled childhood. CMHS provided services between June 2010 and April 2014 including case management, diagnostic assessments and medication services. CMHS recommended individualized therapy, family therapy, and cognitive behavioral therapy. The diagnostic assessments all indicated a major depressive disorder with a 2013 assessment indicating a diagnosis of oppositional defiant disorder. J.G.G. participated in individual therapy but ultimately his mother decided to discontinue the services and focus on school-based interventions.

The district court's finding that this factor weighs in favor of certification is not clearly erroneous and the court did not abuse its discretion in finding that this factor weighs in favor of certification.

### Adequacy of punishment and programing in the juvenile system and the available dispositional options

The district court analyzed the last two factors together and determined they favored certification. The probation officer identified two juvenile dispositional options available for appellant: Mesabi Academy and MCF Red Wing. Both placements would accept appellant up to his 21st birthday and provide sex-offender treatment. At Red

Wing, treatment generally lasts between 24 and 42 months. At the time of the certification order, appellant would age out of the juvenile system in 38 months.

The district court expressed concern that J.G.G. would not complete sex-offender treatment before he reached 21 years of age especially given his noncompliance with past services, and that public safety would not be served if J.G.G. did not complete sex-offender treatment. It also found that because the charged offenses are very serious and the "seriousness is compounded by the fact that [J.G.G.] knew that his actions were illegal, but still engaged in them on multiple occasions," the juvenile system did not offer adequate punishment for the offenses. It concluded "[e]ven though relevant treatment is available in the juvenile system, the available programming is not adequate to protect public safety due to the likelihood that [J.G.G.] will not participate in programming meaningfully." The court did not err, or abuse its discretion in making these findings.

This is a presumptive certification case, and therefore, the burden of proof is on J.G.G. to show by clear and convincing evidence that public safety would be served by designating his case extended juvenile jurisdiction. Minn. Stat. § 260B.125, subd. 3. J.G.G. presented two witnesses to rebut the presumption that public safety would be served by maintaining his case in the juvenile system, D.J.B.'s mother and Dr. Ascano, a licensed psychologist with a subspecialty in forensic psychology. But the district court was not persuaded by their testimony. Specifically, it discredited large portions of Dr. Ascano's testimony. It found that, although Dr. Ascano "clearly has the credentials to provide expert testimony in this type of case" the court was concerned that he made his recommendations "without being fully apprised of [J.G.G.'s] history of delinquency and

10

mental health services." We defer to the district court on matters of credibility. *See In re Welfare of Children of S.W.*, 727 N.W.2d 144, 151 (Minn. App. 2007) (citing *In re Welfare of Children of J.B.*, 698 N.W.2d 160, 167 (Minn. App. 2005)) ("The weight to be given any testimony, including expert testimony, is ultimately the province of the fact-finder."), *review denied* (Minn. Mar. 28, 2007).

In conclusion, the district court did not abuse its discretion when it certified J.G.G. for adult prosecution because its findings on four of the public safety factors, including the seriousness of the offense, are not clearly erroneous and favor certification. *J.H.*, 844 N.W.2d at 40. Although the district court considered inadmissible delinquency petitions, "whether the error[s] require[] reversal depends on the weight given to the inadmissible records and the weight given [to] other factors." *N.J.S.*, 753 N.W.2d at 710. The district court appropriately considered the seriousness of the offense, which is one of the factors given greater weight, and four of the public safety factors favored certification; therefore, any errors do not require reversal.

**Affirmed.**

11